## MITCHELL et al. v. DES MOINES & F. D. R. CO. et al.

(Circuit Court of Appeals, Second Circuit. December 15, 1920. Rehearing Denied January 26, 1921.)

### No. 91.

1. **Railroads ⚖➡123—Sale to corporation owning majority of stock held not to support inference of fraud or breach of trust.**

   Under Code Iowa, §§ 2036, 2066, authorizing the owners of three-fourths of the stock of a railroad corporation to sell or convey its property, where the directors of a railroad submitted to the stockholders the question of selling its property to another company and made no attempt to coerce or influence the stockholders, and the sale was approved by three-fourths of the stock, fraud or breach of trust could not be inferred, though the buying corporation owned a majority of the selling corporation's stock, and a majority of the selling corporation's directors were also directors of the buying corporation.

2. **Corporations ⚖➡152—Payment of dividends rests in directors' discretion, which will not be interfered with.**

   Whether a dividend shall be paid rests on the fair and honest exercise of discretion of the corporate directors, and such exercise of discretion is never interfered with by the court.

3. **Corporations ⚖➡152—Accumulation of net profits does not show duty to declare dividends.**

   The fact that net profits of a corporation had accumulated does not show that dividends were due stockholders or that it was the duty of the directors to declare such dividends.

4. **Corporations ⚖➡152—Declaration of dividends not compelled unless neglect unreasonable and wrongful and without any reason.**

   It is only when the directors have unreasonably and wrongfully refused or neglected to declare dividends when there are surplus profits out of which they may be declared, and there is no good reason for the failure, that a court of equity by its decree will compel the declaration of dividends.

5. **Railroads ⚖➡15—Mere existence of balance from rents of railroad held not to authorize decree compelling declaration of dividends.**

   Where a railroad company leased its property to another for a rent consisting of the net earnings after specified deductions, the mere fact that at the date of a subsequent sale of the road to the lessee a calculable indebtedness appeared to be owing after all deductions did not warrant a decree requiring a declaration of dividends where it was not shown that this excess was not necessary to maintain the demised premises in good order and repair or in the exercise of a wise discretion was not lent or advanced to the lessee to enable it to operate the two lines of road as a unit for the advantage of both companies.

On Petition for Rehearing.

6. **Corporations ⚖➡417—Resolution adopted by stockholders' meeting held to have authorized directors, in selling property, to release buyer from claims.**

   Where stockholders of a corporation were notified that a meeting would be held to consider a sale and conveyance of its property, and that the approval of the form of agreement would be submitted, and at such meeting resolutions were adopted approving the form of agreement, which provided that the selling corporation released the buying corporation from the payment of any and all amounts due and owing from the buying corporation, the directors were acting with full authority from the stockholders in releasing the buying corporation from the payment of such amounts.

⚖➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Southern District of New York.

Suit by William Mitchell and others, as temporary administrators of Amos F. Eno, deceased, against the Des Moines & Ft. Dodge Railroad Company and another, to enjoin the transfer of railroad property, and for a compulsory declaration of dividends. Decree for defendants, and complainants appeal. Affirmed.

Henry De Forest Baldwin, of New York City (Howard Mansfield and Thaddeus G. Cowell, both of New York City, of counsel), for appellants.

Larkin, Rathbone & Perry, of New York City (Lewis H. Freedman, of New York City, of counsel), for appellees.

Before WARD, ROGERS, and MANTON, Circuit Judges.

MANTON, Circuit Judge. Amos F. Eno in his lifetime filed this bill in equity, as the owner of 900 shares of the preferred stock of the Des Moines & Ft. Dodge Railroad Company, and sought to enjoin the proposed transfer of the railroad and property of that company to the Minneapolis & St. Louis Railroad Company, and to require the payment to the complainant of moneys which he claimed to be entitled to receive as dividends on his stock from the surplus income of that company for the years 1909, 1910, 1911, 1912, 1913, and 1914. During the pendency of the suit he died, and his temporary administrators continued the prosecution of the suit. Upon the trial appellants abandoned their claim to enjoin the transfer of the property of the Des Moines & Ft. Dodge Railroad Company to the Minneapolis & St. Louis Railroad Company. They continued, however, in their demand for relief as to the payment to them of moneys, as dividends, alleged to be surplus income of the company.

The Des Moines Company was incorporated on February 21, 1874. Its articles of incorporation were amended April 8, 1881. On February 19, 1915, there were outstanding 7,635 shares of preferred stock of the Des Moines Company amounting to a par value of $763,500, and 42,831 shares of common stock, amounting in par value to $4,283,100. The complainants' intestate, at the time that injury is claimed to have been done, was the owner of 900 shares of preferred stock, 700 of which were purchases in 1909, and 200 shares in 1911. The Minneapolis Company held 25,300 shares of the common stock from 1904, and continued thus holding the control of the Des Moines Company, with ability to nominate a board of directors of its choice. Five of the nine directors of the Des Moines Company were also five of the directors of the Minneapolis Company, and this was increased to seven in 1911 and reduced to six in 1913, 1914, and 1915. On January 1, 1905, a lease was made by the Des Moines Company of its railroad to the Minneapolis Company at a fixed rental to January 1, 1935. The rent provided for under this lease was the net earnings received by the lessee from the use and operation of the property which remained after deducting from such earnings the entire cost of the net earnings, maintenance, repairs, and renewals of the line of railroad and the oth-

er property. The lease further provided for the payment of taxes and assessments, and the payment of the corporate obligations of the Des Moines Company. It was provided that payment should be made on the 15th of January of each year. The Minneapolis Company operated, under the terms of this lease, until February, 1915. At that time it owed the Des Moines Company $442,000, arrears of rent; that is, this sum consisted of an accumulation of annual balances and surplus earnings. The books of the Minneapolis Company and of the Des Moines Company show this indebtedness as above stated. It is the contention of the appellants that these moneys should have been paid to the stockholders as dividends.

On March 31, 1914, the stockholders were notified that a meeting would be held on June 4th of that year to consider the matter of the sale and conveyance by the Des Moines Company of its property to the Minneapolis Company, and the approval of the form of agreement of such sale and conveyance would be submitted at the meeting. The meeting was subsequently held and the sale was approved by the stockholders. At the meeting resolutions were there adopted approving the form of the agreement and authorizing the sale. Three-fourths of the shares of stock were represented, and the only protest of the sale recorded was that of the 900 shares owned by the appellants' intestate. The sale was subsequently made. The statutes of the state of Iowa, under which laws the Des Moines Company was incorporated, and of the state of Minnesota, under the laws of which state the Minneapolis Company was organized, were complied with as to the sale and purchase of the property. Among other things, the agreement which was approved provided that the Des Moines Company release and discharge the Minneapolis Company "from the payment of any and all amounts which may then be due and owing from the Minneapolis Company to the Des Moines Company, not including, however, the obligations on the part of the Minneapolis Company to be performed and observed by it as provided in this agreement." The agreement provided for the sale of "all rights, powers, privileges, franchises, immunities, and other property used in connection therewith and appertaining thereto." No effort had ever been made to collect the arrears of rentals which were still owing at the time the sale was consummated, and the sale was fully consummated before this suit was instituted.

[1-3] Under the terms of the sale and the plan of organization, securities of the Minneapolis Company were given for stock and other securities of the Des Moines Company. It is apparent that the accumulated surplus—that is, the indebtedness owed by the Minneapolis Company to the Des Moines Company—was part of the consideration for which the Minneapolis Company issued its securities for the purpose of purchasing the road and other property of the Des Moines Company. The record disclosed that the directors of the Des Moines Company submitted the entire proposition to the stockholders of the Des Moines Company with recommendations only and permitted the stockholders of the Des Moines Company freedom of action, and there is nothing to indicate any attempt to coerce or influence them in their determination. The only opposition offered was that of the appellants'

intestate, and the sale met the approval of three-fourths of the outstanding capital stock of the corporation. The laws of Iowa under which the Des Moines Company was organized expressly authorize stockholders owning more than three-fourths of the outstanding stock to sell or convey all its property. Sections 2036, 2066, of the Statutes of Iowa (Railroad Law). There is no evidence of fraud in the transaction or breach of trust. We think none can be inferred from the facts disclosed. It is not a transaction where the majority of the stockholders have consummated a sale, for their own benefit, of the assets of the corporation. It is a sale made after authorization of the directors pursuant to· statutory authority. At no time was this indebtedness of rent collected, and therefore there was no fund in existence which the corporation might use for the purpose of paying dividends. Whether a dividend shall be paid rests on the fair and honest exercise of discretion of the directors. Such exercise of discretion is never interfered with by the court. Union Pacific R. Co. v. Frank, 226 Fed. 906, 141 C. C. A. 510. The fact that net profits did, in fact, accumulate during the designated period, does not amount to a determination that dividends were due stockholders or a duty to declare such dividends. N. Y. & Lake Erie v. Nickals, 119 U. S. 296, 7 Sup. Ct. 209, 30 L. Ed. 363; Staats v. Biograph Co., 236 Fed. 454, 149 C. C. A. 506, L. R. A. 1917B, 728.

[4, 5] It is only when the stockholder can satisfy a court of equity, in an action for a dividend not declared, that the directors unreasonably and wrongfully refused or neglected to declare dividends when there are surplus profits out of which it may be declared, and there is no good reason for their failure, it will compel, by decree, the declaration of dividends. The courts will not, however, interfere unless the action of the directors appears to be fraudulent, oppressive, or unreasonable. In re Brantman, 244 Fed. 101, 156 C. C. A. 529. Indeed, there is no proof here to show that such excess or net profit was not necessary for maintaining the demised premises in good order and repair, or that in the exercise of a wise discretion such moneys were not lent or advanced to the Minneapolis Company so as to enable it to operate the two lines of railroad as a unit, in a way which was advantageous to both companies. Permitting the continuance of this debt, and not collecting it, is not shown to have been unreasonable or fraudulent. All that does appear is that after the deduction of taxes, interest on bonds, cost of additions and betterments, there appears to be a calculable indebtedness owed by the Minneapolis Company to the Des Moines Company which, if collected, may have been used as dividends on the stock. On the other hand, the record disclosed that these circumstances were in fact known to the Minneapolis Company. The bookkeeping of each company records this, and these facts, standing alone, do not warrant a court of equity in interfering in what apparently was the fair discretion exercised by the directors.

Judgment below is affirmed.

## On Petition for Rehearing.

PER CURIAM. [6] On this petition for rehearing, it is urged that we have failed to fully consider the claim of the appellants that the

sale of the property of the Des Moines Company to the Minneapolis Company was the physical property only, and was not intended by the stockholders to include the cancellation or satisfaction of the indebtedness owing for rent by the Minneapolis Company. This, for the reason, it is claimed, that notice of the meeting given to the Des Moines stockholders, at which meeting the sale was authorized, did not disclose to such stockholders, nor was it ever disclosed, that it was intended to sell property other than the physical property of the Des Moines Company. We fully appreciated the appellants' claims, but, as stated in our opinion, we think that the agreement for the sale of the property of the Des Moines Company to the Minneapolis Company met the approval of the stockholders. It was intended to convey, not only the physical property as such, but the stockholders intended to convey the arrears of rent or earnings. When the directors released and discharged the Minneapolis Company from the payment of "any and all amounts which may then be due and owing from the Minneapolis Company to the Des Moines Company," it acted with full authority of the stockholders, duly granted, to convey such assets or property of that company.

Motion for rehearing denied.