GEORGE A. FERNALD & others *vs.* FRANK RIDLON COMPANY
& others.

Suffolk.    March 13, 1923. — June 22, 1923.

Present: RUGG, C.J., BRALEY, DeCOURCY, & CROSBY, JJ.

*Corporation,* Dividend, Officers and agents.    *Equity Jurisdiction,* To require
payment of dividend by corporation.    *Equity Pleading and Practice,* Master:
exceptions to report.

A suit in equity cannot be maintained by the holders of preferred stock in a
Massachusetts corporation against the corporation and those in control
of its affairs to compel the payment of dividends to the plaintiffs, where it
appears that, although the corporation had on hand cash, representing net
profits, which was available for use in paying dividends, the individual
defendants, acting wisely, with foresight, in good faith, in a proper use of
their discretion in view of the general financial condition and the condition
of the corporation and not contrary to any law or by-law of the corporation,
had determined not to deplete the corporation's treasury by such use of the
funds nor to jeopardize the corporation's credit by borrowing for the pur-
pose of paying dividends, and where it further appears that salaries paid
to the officers of the corporation were not unwarranted, but were less than
they would have been entitled to if the matter had arisen " on a *quantum
meruit.*"

A provision in the by-law of a Massachusetts corporation that " The preferred
stock shall be entitled to dividends out of the net profits of the company as
determined by the directors . . . " cannot properly be construed as mean-
ing that, if there are net profits, in any event they must be distributed by
the directors in payment of dividends, regardless of the financial condition
of the company: Whether a dividend shall be declared rests in the sound
discretion of the directors unless some restraint is imposed by statute,
charter, by-laws, or otherwise, and such discretion will not be interfered
with by the courts unless the directors act fraudulently or unreasonably.

In the suit above described, findings by a master in substance that certain
investments, made by the individual defendants, acting as directors, of
some of the capital of the defendant corporation in other corporations
under arrangements whereby such corporations coördinated with the
defendant corporation in the business and purpose stated in its charter,
were made in good faith, in the exercise of sound business judgment and
were justified by the results, were *held* to show no valid reason why the
plaintiffs should be entitled to a decree requiring a payment of dividends
to them.

An exception to a master's report founded upon an alleged finding by the
master which he did not make must be overruled.

An exception to a finding of fact in a report by a master in a suit in equity
must be overruled where the evidence before the master is not reported
and the finding is not inconsistent with other findings in the report.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on June 27, 1921, and afterwards amended, by three holders of preferred stock of the Frank Ridlon Company, a Massachusetts corporation, who alleged that they brought the bill " in behalf of themselves and all other preferred stockholders of the Frank Ridlon Company who may desire to join with them as parties plaintiff and share in the expenses of this suit," against that corporation, Edward G., Oliver M., Gilbert E., and William D. Young, Frank M. Castner and Agnes I. Bonner, seeking a decree, (1) " that the defendants Edward G. Young and Oliver M. Young, while holding the common stock and being the directors of the Frank Ridlon Company, have not acted with due regard for the rights and interests of the preferred stockholders in the matter of dividends; " (2) " that the plaintiffs are now entitled to have dividends declared and paid on the preferred stock for the quarter ending March 1, 1916, and each quarter thereafter, with interest at seven per cent according to the by-laws of the company; " (3) " that the defendants may be ordered to declare and pay to the plaintiffs the dividends and interest thereon, to which the plaintiffs are found to be severally entitled," and that, (4) " if need be, a receiver may be appointed to take charge of the affairs of said Frank Ridlon Company and, if need be, wind up said company and distribute its assets."

The suit was referred to a master. Material findings by the master are described in the opinion. The plaintiff filed the following exceptions to the master's report:

(1) To " all the findings and statements of the master in his report as to the profits and liabilities of the Frank Ridlon Company during the years 1916 to 1922, both inclusive, in so far as they are based upon the assumption that the common stock, having a par value of $120,000, is to be reckoned as a liability in determining the rights of the preferred stockholders, because said findings and statements are contrary to law."

(2) To " the finding of the master that the action of Messrs. Edward G. Young and Oliver M. Young in investing capital in the American Electric Service and Maintenance

Company of Springfield as a matter of fact was warranted by the situation and justified by the results, because said finding is inconsistent with the other facts found by the master."

(3) To " the findings of the master that the Messrs. Young acted reasonably and in good faith in turning over the wiring business to the Brockton company and in making the investments in its stock amounting to $26,000 and that the new arrangement has proved an advantageous one, and that as a matter of fact the investment is not *ultra vires*, because said findings are contrary to the evidence and especially because said findings are inconsistent with the other facts found by the master."

(4) To certain findings of the master bearing on whether the defendants Edward G. and Oliver M. Young acted in good faith in the premises, " because said findings are contrary to the evidence, and especially because said findings are inconsistent with the other facts found by the master."

(5) To " so much of the master's report as fails to recognize the rules of law enunciated in *Field* v. *Lamson & Goodnow Manuf. Co.* 162 Mass. 388, 395, viz., that preferred stockholders are not bound to wait for dividends till the impaired capital has been made good; and the rule of law stated in *Page* v. *Whittenton Manuf. Co.* 211 Mass. 424, 428: ' If by the shrinkage of quick assets or of working capital . . . new capital must be raised . . . the common stock which under the contract assumed the burden must be first resorted to even to the point of extinction before the preferred stock can be compelled to contribute.' "

The suit was heard upon the pleadings, the master's report and the plaintiffs' exceptions thereto by *Pierce*, J., and by his order there were entered an interlocutory decree overruling the exceptions and confirming the report and a final decree dismissing the bill. The plaintiffs appealed.

*H. R. Bailey*, for the plaintiffs.

*A. T. Smith*, for the defendants.

CROSBY, J. This is a bill in equity brought by preferred stockholders of the defendant corporation to compel the directors of that company, who are joined as defendants,

to declare and pay dividends to the preferred stockholders. The case was heard by a master; the plaintiffs' exceptions to his report were overruled, and the report was confirmed by a single justice of this court. The case is before us on the plaintiffs' appeal from the interlocutory decree overruling the exceptions and confirming the report, and on an appeal from a final decree dismissing the bill. The evidence before the master is not reported.

The defendant corporation was organized under the laws of this Commonwealth; its charter is dated January 25, 1906; the purposes of the corporation are recited at length in the master's report and need not here be repeated. At the time of incorporation the authorized capital of $75,000 consisted of two hundred and fifty shares of preferred and five hundred of common stock; afterwards this was increased to twelve hundred shares of preferred and twelve hundred of common stock. The business of the company up to the year 1914 was chiefly that of buying, selling, repairing and dealing in secondhand electric motors and of selling railway supplies. From the date of incorporation until about January 1, 1916, Lewis N. Wheelock, Harry B. Ivers, and Edward M. Graham were the owners of substantially all of the common stock. The plaintiffs George A. Fernald and Oliver E. Williams are bankers and brokers doing business as George A. Fernald and Company. In 1915 in consideration of the payment to them of $20,000 as commission by the defendant company, they sold to their customers all the preferred stock, which was of the par value of $120,000; this stock was so sold before the defendant Edward G. Young or Oliver M. Young became connected with the company or owned any of its stock. The Youngs acquired control on January 1, 1916, and about that time it appeared that, owing to misrepresentations made by those who had been in control of the company in 1915, George A. Fernald and Company had been deceived as to the financial condition of the corporation, which then was not good. The last dividend paid on the preferred stock was on December 1, 1915. The former owners of the common stock turned it over to the Youngs without consideration,

except their release from personal liability on the company's obligations.

It is found by the master that, at the close of 1915 and at the beginning of 1916, many bills were unpaid and creditors were pressing for payment; that there was but little cash in the treasury; that the company was in bad financial condition, and, if liquidation had been forced in January, 1916, the holders of the common stock would have realized nothing and the holders of the preferred stock would have received a percentage only of the par value of their shares. This condition of affairs was due to the fact, as the master finds, that the original owners of the common stock, who were then in control of the management, had departed from the established business of the company (of buying and selling secondhand motors) and were engaged in placing upon the market new products, some of which proved to be worthless; and on account of which the company had invested large amounts in material of little value if disposed of at forced sale.

On March 1, 1916, the directors of the company passed the preferred quarterly dividend payable on that date, and have continued to do so on each dividend date up to the time of the filing of the bill on June 27, 1921. The principal question is, whether the directors were justified in failing to declare and order the payment of dividends during this period: this is to be determined largely by the financial condition of the company between 1915 and 1922.

The master has embodied in his report certificates of condition filed by the company in the form required by the statutes of the Commonwealth during the years in question, which he finds to be accurate so far as shown by the company's books. He finds that "A summing up of these figures shows profits of $12,305.85, $17,560.17, $3,924.35, $16,410.92, and $9,244.62 during the years 1916, 1917, 1918, 1919, and 1920, and totalling $59,445.91. The losses during 1921 are $22,156.62. The total earnings during the six years from 1916 to 1921, both inclusive, were $37,289.29. If we take the certificates of condition as we find them, the year 1920 shows a loss of $46,010.43 and the total net loss

for the six-year period is $17,965.76." He also found that the assests set forth in the certificates do not show the real value in all cases: for instance, in the certificate of condition of January 1, 1916, the entry " Patent rights, trademarks and patterns $58,143.52 " is inaccurate; at that time the company owned one patent which was sold in 1916 for $3,000, and it was the only patent of value owned by the company, yet this item was thereafter carried in the statements of December 31, 1916, December 31, 1917, December 31, 1918, and December 31, 1919, at $55,256.05. He also found that the company had no trademarks or patterns of any value.

He further found that neither in 1916 nor in any of the subsequent years, including 1921 and 1922, did the good will of the company have more than a nominal value and that the action of the directors in 1920 " in reducing this item to $1 is in accordance with good bookkeeping and the realities of the case." In view of the findings that the directors acted in good faith in making the reductions in the items of good will and patent rights, trademarks and patterns, we are of opinion that they acted properly and did not thereby violate any duty they owed to the preferred stockholders. It is also found that the values placed upon certain other assets in the statements were incorrect and misleading.

Although the first dividend after the present management acquired the common stock was passed on March 1, 1916, and each quarterly dividend payable thereafter was also passed, it appears that the plaintiff George A. Fernald and Company (who had sold this stock to their customers), paid to the preferred shareholders the dividend due on March 1, 1916, and those due thereafter until some time in 1921. After the payment of the amount of these dividends the stockholders delivered at different times to George A. Fernald and Company orders on the treasurer of the Frank Ridlon Company for the amount of dividends due and unpaid; by reason of which orders George A. Fernald and Company contend that they stand in the shoes of the preferred stockholders in respect to the arrears of dividends beginning with March 1, 1916, and ending with March 1, 1921; and the master so finds. In 1920 George A. Fernald

and Company brought a bill in equity in this court to recover the above amount, claiming that the payments were made at the request of the defendant company and amounted to a loan by the plaintiffs to that company. The claim was not sustained, and a decree was entered dismissing the bill; from which decree the plaintiffs did not appeal.

At a meeting of the stockholders of the company, held on March 12, 1915, the articles of incorporation were amended in part as follows: " Dividend provisions. The preferred stock shall be entitled to dividends out of the net profits of the Company as determined by the Directors, payable quarterly on March 1, June 1, September 1, and December 1, in each year, at the rate of seven per cent. (7%) per annum and no more. Such dividends shall be cumulative and be paid in full with interest at the rate of seven per cent. (7%) per annum on any arrears before any dividends are paid or set apart on the common stock, provided, however, that the Board of Directors, in its discretion, may declare and pay dividends out of the net profits of the Company upon the common stock, after each quarterly payment of one and three fourths (1-¾) per cent. and all dividends and interest then accumulated in arrears of the preferred stock shall have been declared and paid or set apart for payment; but no dividends shall be declared or paid on the common stock which will reduce the amount of the Net Quick Assets of the Company as hereinafter defined, to less than one and one quarter times the par value of the then outstanding preferred stock. The term ' Net Quick Assets ' shall be taken to mean the excess of cash accounts and bills receivable, less a reserve sufficient in the opinion of the Board of Directors to cover bad debts and doubtful assets, and the merchandise and supplies at cost or book value, whichever is less, above all debts of the corporation, including any dividends declared or accrued, but unpaid, and a proper proportion of accruing taxes, rentals, and similar charges, all as determined by the Directors."

As to the failure of the directors to declare dividends, the master states: " I find that the directors acted wisely and with foresight and in good faith toward the preferred share-

holders in deferring dividends and conserving their cash resources during the years 1916 to 1921 and the first half of 1922." This was the entire period under consideration by him.

The master has found that, in every instance where the conduct of the directors is complained of, they were not guilty of any fraud, but acted in good faith and in accordance with sound judgment. These findings in the absence of a report of the evidence must stand.

The provision relating to dividends that " The preferred stock shall be entitled to dividends out of the net profits of the Company as determined by the directors . . . " cannot properly be construed as meaning that, if there are net profits, in any event they must be distributed by the directors in payment of dividends, regardless of the financial condition of the company. It might. be ruinous to the corporation if it was compelled to distribute its cash on hand when it was necessary to retain it to conserve its credit and carry on its business. The mere fact that a corporation has in its treasury cash which represents net profits does not entitle the stockholders to the payment of dividends. Whether a dividend shall be declared rests in the sound discretion of the directors unless some restraint is imposed by statute, charter, by-laws, or otherwise, and such discretion will not be interfered with by the courts unless the directors act fraudulently or unreasonably.

As was said by Morton, J., in *Field* v. *Lamson & Goodnow Manuf. Co.* 162 Mass. 388, at page 394: " The act itself does not in terms compel such a division. And we see nothing in it to take the case out of the general rule, that, in the first·instance, the decision of the question whether there shall or shall not be dividends lies with the company or its agents. Looking at § 3 in connection with the rest of the act, we think that the reasonable construction of it is, that, if there are net profits which, in the fair judgment of the company or its agents, taking all the circumstances into account, are or should be available for dividends, then the preferred stockholders are entitled to receive dividends on their stock, at the rate fixed by the vote of the company and

expressed in the certificates, before any dividends are paid on any other stock, and that if the company has passed any dividends the preferred stockholders are entitled to have them made good to them before any dividends are paid on any other stock." In that action the fact that the corporation had guaranteed the dividends made the plaintiff's position stronger than in the case at bar; and yet it was held that the company was not liable for such dividends merely because there were net profits. The doctrine in that case has recently been affirmed in *Lee* v. *Fisk*, 222 Mass. 418, 421. *Barnard* v. *Vermont & Massachusetts Railroad*, 7 Allen, 512, 521. *McLean* v. *Pittsburgh Plate Glass Co.* 159 Penn. St. 112. *Knight* v. *Alamo Manuf. Co.* 190 Mich. 223. The decisions of the Supreme Court of the United States are to the same effect. *New York, Lake Erie, & Western Railroad* v. *Nickals*, 119 U. S. 296, 306. *Gibbons* v. *Mahon*, 136 U. S. 549, 558. *Southern Pacific Co.* v. *Lowe*, 247 U. S. 330, 338. The rule is the same in England. *Bond* v. *Barrow Hæmatite Steel Co.* [1902] 1 Ch. 353.

As to cash which the company kept on hand and which the plaintiff contends could have been used for the payment of dividends and was fraudulently used by the directors, the master states: " I find that the company was not at any time in such a position that it could be said there was more money on deposit to its credit in the bank than was needed for the carrying on of its business." This finding is to be considered in connection with the further finding that many of the concerns with which the company dealt required that cash be paid on delivery of merchandise purchased, and that the company had difficulty in obtaining credit from banks.

The master found that the defendants Edward G. Young and Oliver M. Young " have devoted their entire time and their most diligent efforts from January, 1916, to June, 1922, toward making the business of the Ridlon Company successful; " that the amounts which they have drawn for their services is considerably less than what they would have been entitled to " if the matter arose on a *quantum meruit;* " that the reason for fixing their compensation at the amounts received was their desire to build up the company and keep

the cash capital unimpaired; that one of them testified that the joint salaries of both would not exceed $10,000 a year until after the payment of deferred dividends should be resumed. In this connection the master found that " This was praiseworthy on their part — it was for the ultimate advantage of the preferred stockholders, and should be given weight in the determination of the issue as to whether or not preferred dividends should be paid presently."

The contention of the plaintiffs that the company unlawfully invested its funds in a corporation in Springfield and in another corporation in Brockton cannot be sustained. The investment in the Springfield corporation is found to be in furtherance of a continuation of a business that the company had already established in that city and was warranted by the situation and justified by the results. It is not argued that this investment was *ultra vires*. It appears that in this transaction the company, in addition to continuing a business it had already established, will be entitled to receive, in July, 1923, $12,500 on an investment of $7,440, made in August, 1919, or a profit of about 60 per cent.

As to the investment in the Brockton company, which company, by its charter, was authorized, among other things, to deal in all electrical devices including the wiring of buildings, and for the purpose of transacting such matters as might be incidental thereto, it is found that the Ridlon company decided to transfer its wiring business to the Brockton corporation; that the affairs of the latter since its acquisition by the Ridlon company have been profitable to some extent; that although no dividends have been paid on its capital stock, the defendants Young acted in good faith in turning over the wiring business to this company and in making investments in its stock; and that the arrangement has proved advantageous to the defendant corporation. We are unable to say that the acquisition of the Brockton company and the investment in its stock are beyond the powers of the defendant company, as shown by its charter. The findings that the stock in these corporations was acquired in good faith, in the exercise of sound business judgment and was incidental to the business of the Frank Ridlon Com-

pany do not show any valid reason for the declaration of dividends. *Edwards* v. *International Pavement Co.* 227 Mass. 206.

The first exception to the master's report cannot be sustained. The net profits of the business, as computed by the master from the certificates of condition of the corporation during the years in question, are unaffected by the inclusion of the common stock as a liability; it was necessary to include it in the certificates of condition. But it is of no importance whether it is included or excluded so far as determining the question of dividends to the preferred stockholders is concerned, as no dividends could be declared out of capital but only out of profits. When the net profits have been ascertained, the fund available for dividends is found.

The plaintiffs' second and third exceptions, relating respectively to the investments in the Springfield and Brockton corporations, for the reasons already stated are unsustainable.

The fourth exception is to the findings of the master contained in the last two paragraphs of his report, it being claimed that they are contrary to the evidence, and inconsistent with the other facts found. The evidence upon which these findings are predicated is not reported; they are therefore conclusive. Futhermore, we discover no inconsistency in them with any others in the report.

The fifth exception, that the report fails to recognize the rules of law enunciated in *Field* v. *Lamson & Goodnow Manuf. Co. supra,* and in *Page* v. *Whittenton Manuf. Co.* 211 Mass. 424, is without merit, for the reasons already given. They are summarized in the finding, which is conclusive, that " the directors acted wisely and with foresight and in good faith toward the preferred shareholders in deferring dividends and conserving their cash resources during the years 1916 to 1921 and the first half of 1922." If it be assumed that preferred stockholders are not bound to wait for dividends until the impaired capital has been made good and the debts have been paid, still the directors, in the exercise of a sound discretion, acting in good faith, were not bound to pay such dividends unless the business of the cor-

poration and its financial condition were deemed by them to warrant such action. If, as the plaintiffs argue, the corporation has power to borrow money to pay dividends in the absence of sufficient cash available, we cannot say that the failure of the directors, in the exercise of their discretion, to raise money by loans for that purpose constituted a breach of duty on their part; the findings of the master establish that they were warranted in taking the position that it was unwise to increase the indebtedness of the company for such a purpose, in view of its financial condition.

*Decree affirmed.*