## THATCHER et al. v. CHICAGO RYS. CO. et al.

(District Court, N. D. Illinois, E. D.    March 22, 1924.)

No. 3553.

Corporations ⬦152—Payment of accumulated dividends held not mandatory.

Under a city ordinance and plan of reorganizing street railways which were in receivership, whereby the stockholders surrendered their stock in the old companies for participating certificates in the new company entitling holders to 8 per cent. cumulative dividends, *held*, that the fact that there was a large surplus did not make the payment of such dividends mandatory, but merely gave certificate holders priority in the matter of dividends, and in the absence of bad faith or abuse of discretion the court could not substitute its judgment for that of the directors, finance committee, and stockholders.

In Equity. Suit by Mahlon D. Thatcher, trustee under the last will of Franklin A. Luce, deceased, and others, against the Chicago Railways Company and others. Bill dismissed.

Robbins, Townley & Wild, of Chicago, Ill., for complainant.

James M. Sheean and Charles S. Babcock, both of Chicago, Ill., for defendant Chicago Rys. Co.

Tenney, Harding & Sherman, of Chicago, Ill., for defendants Riley and others.

Francis X. Busch, Corp. Counsel, of Chicago, Ill., for defendant city of Chicago.

CLIFFE, District Judge. This is a suit in equity by the holders of series 1 participation certificates of the Chicago Railways Company against the depositaries of the capital stock of the Chicago Railways Company, the members of the finance committee created by virtue of a certain first mortgage on the properties of the railway company, the city of Chicago, and the city comptroller.

Plaintiffs allege in their bill that they were the holders of all the capital stock of the two railway companies which operated in Chicago immediately prior to the present Chicago Railways Company; that in 1903 the United States District Court appointed a receiver for the said companies; that in 1907 the city of Chicago passed an ordinance for the purpose of reorganizing said company (Plaintiffs' Exhibit A); that pursuant to said ordinance a plan of reorganization was formulated, as a result of which the present Chicago Railways Company was created (Plaintiffs' Exhibits B and C); that in pursuance of said ordinance and plan of reorganization plaintiffs surrendered to the new railway company their stock in the old companies, and received in return series 1 participating certificates in the new company; that by virtue of the plan of reorganization the holders of these certificates were entitled to an annual 8 per cent. cumulative dividend, as soon as funds were available after the bonded interest and certain reserve and sinking funds, were set aside; that dividends were paid up to 1917; that since 1917 the bonded interest and the necessary reserve and sinking funds have been

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

provided for, and funds are available from earnings to pay the dividends; that the Railways Company has refused to pay said dividends, and hence this suit is brought to compel such payment. Defendants have filed a motion to dismiss, on various grounds which I will presently discuss.

The ordinance of 1907 and the pursuant reorganization plan contained a vast number of provisions, but I will cite only those which I deem material to this litigation: The new company was capitalized at $100,000. First mortgage bonds were to be issued for the then present value of the existing lines and equipment, for the cost of reconstruction, and for all subsequent extensions and additions thereto. The company was granted a franchise to operate in the city up to February, 1927, and the city was given an option to take over the properties at any time upon payment of $29,000,000, plus the value of additional property and equipment, to be ascertained by a board of supervising engineers created by the ordinance for that purpose. The present purchase price amounts to about $93,000,000. Six per cent. of the gross proceeds of each year was to be set aside for maintenance and repair. Eight per cent. of the gross proceeds of each year was to constitute a reserve fund for renewals and depreciation. Special accounts were to be created for insurance and personal injury claims. The city was to receive 55 per cent. of the net income, and $250,000 was to be set aside each year for the retirement of mortgage bonds. In addition to a board of directors, a finance committee was created, which committee was to approve all dividend distributions before made.

It appears that all of these conditions have been fulfilled, that the net earnings since January 31, 1917, have been $2,302,699, and that the company has accumulated a surplus of $1,928,000. Hence ample funds are available for the payment of the 8 per cent. dividend. It is the contention of plaintiffs that the board of directors, the finance committee, and the stockholders are divested of all discretion in the matter of paying the dividends, because the plan of reorganization gives to the certificate holders a legal right to the dividends the moment the funds are available, after the interest funds, sinking funds, reserve funds, etc., are set aside. I am unable to agree with plaintiffs' interpretation of the plan of reorganization. A careful reading of the plan leads me to the conclusion that it was not the intent of the "plan" to deprive the company of all discretion, but rather a protection was given the holders of these certificates by granting them priority in the matter of dividends.

The company has not violated this protection of priority, and therefore no right to an immediate dividend exists. The court cannot, therefore, substitute its judgment for the judgment of the board of directors, the finance committee, and the stockholders of the company, in the absence of bad faith or abuse of discretion on their part. N. Y., Lake Erie & Western R. R. v. Nickals, 119 U. S. 296, 7 Sup. Ct. 209, 30 L. Ed. 363; Wilson v. American Ice Co. (D. C.) 206 Fed. 736; Union Pacific R. R. Co. v. United States, 99 U. S. 402, 25 L. Ed. 274; Mitchell v. Des Moines Co. (C. C. A.) 270 Fed. 465.

The defendants have set forth that, because of the early expiration of the franchise, the early expiration of the mortgage indebtedness,

because of new problems continually confronting the company, it is necessary to set aside a large surplus for the protection of all persons concerned. I do not care to discuss the company's policy in that respect, except to say that a showing has been made that the Railways Company is in good faith in refusing to pay the dividends. Furthermore, bad faith or abuse of discretion is not alleged or claimed by plaintiffs. Such being the case, the court is without power to compel the payment of dividends. See cases hereinbefore cited.

Since the contractual obligation imposed by the plan of reorganization has not been violated, I must grant the motion to dismiss. I do not pass upon the alleged insufficiency of the averments concerning demand by plaintiffs and the alleged absence of necessary parties, because, even if these alleged imperfections were cured, my conclusion would not be changed.

Let the bill be dismissed.