GESELL and another, Special Administrators, Respondents, vs. TOMAHAWK LAND COMPANY, Appellant.

*September 16—October 14, 1924.*

*Corporations: Receivers: When not appointed: Minority stock-holders: Control of policy of corporation by courts: Compelling declaration of dividends: Directors as necessary parties.*

1. One of the principal purposes of an action by a minority stock-holder in a corporation being to compel the payment of present and future dividends by the corporation, which it is claimed is in a prosperous financial condition, allegations in the complaint to the effect that the corporation is in position to and should pay such dividends are a negation of one of the most controlling considerations—namely, insolvency—upon which a court undertakes the management of the affairs of a corporation, and there being no allegations of fraudulent management or diversion to their own use of funds or property of the corporation by the directors or officers, the trial court properly refused to appoint a receiver; the fact that the business policy of the majority is contrary to the wishes or judgment of the minority not being a sufficient warrant for the appointment. p. 550.

2. The complaint of a minority stockholder of a corporation organized for and engaged in selling its own lands, the assets of which have increased to over three times its original capital stock, and which, contrary to the wishes and judgment of the minority, has adopted a policy of slow rather than rapid disposition of its assets, does not show such an abuse of discretion which, in the absence of fraud, authorizes a court to compel the payment of dividends. p. 550.

3. Where the course of a corporation is a lawful one, pursued by lawful means and within its corporate powers, the courts will refuse to interfere, even though the course may not be the wisest one or the best policy. p. 552.

4. The primary managing power and duty as to the stock, property, affairs, and business of a stock corporation is by statute (sec. 180.13) vested in the directors and not in the stockholders.  p. 553.

5. There must be an exercise of the good-faith discretion of directors in declaring a dividend before there can be such a segregation of corporate funds that the stockholder becomes entitled to his proportionate share of the segregation as against the corporation itself.  p. 554.

6. The directors of a corporation, in whom, under sec. 182.19, Stats., is vested the power of declaring dividends, not having acted or having refused to act in that regard, are necessary parties to an action to compel the payment of dividends. p. 555.

APPEAL from an order of the circuit court for Lincoln county: A. H. REID, Circuit Judge. *Reversed.*

The action was originally brought by Marie H. Kelley. After her death the plaintiffs as special administrators were substituted.

The parts of the complaint, many allegations being upon information and belief, material for its disposition are in substance as follows:

Defendant is a Wisconsin corporation.  It never has been engaged in mercantile or manufacturing enterprises except as may appear from later recitals.  It has engaged in no other business than the sale of lands which it owns and "is and for some time past has been in the ostensible process of liquidation."

That 5,190 of the 6,000 shares of its capital stock of the par value of $100 each have been issued and are outstanding.   That Marie H. Kelley owned 245 shares thereof. That certain of the stockholders had shares issued to them solely for the purpose of qualifying them to act as directors.

That R. B. Tweedy, though having some 2,500 of said shares in his name, is not the real owner thereof and is one of the directors and president, and to all practical intents and purposes has the sole and complete direction of the

affairs of said corporation, though there are other directors and officers.

That defendant on December 31, 1922, was possessed of property valued on the company books approximately as follows:

| | | |
|---|---:|---:|
| Cash | $30,356 | 19 |
| Outside farm and cattle loans | 59,106 | 50 |
| Timber contracts | 184,780 | 27 |
| Land contracts | 61,214 | 04 |
| Option lease sale contracts | 501,636 | 67 |
| Live stock and other personal property | 64,539 | 56 |
| 70,073 acres of land | 485,731 | 51 |
| Stumpage and timber | 106,177 | 28 |
| Buildings and improvements | 22,989 | 59 |
| Riverside farm, buildings and improvements | 79,966 | 12 |
| Office building | 50,135 | 95 |
| Logging railroad account | 7,300 | 00 |
| City real estate: | 6,987 | 76 |
| Book accounts | 4,737 | 21 |
| Sundries (including about $5,000 in mortgages) | 7,644 | 21 |
| Total assets | $1,669,302 | 86 |

That the liabilities exclusive of capital stock and book surplus are not in excess of $100,000.

That at least $200,000 of said assets, consisting in part of timber contracts, outside farm and cattle loans, and cash, could be readily converted into money without loss and be available for payment of dividends.

That despite protests often made by the original plaintiff no dividends have been paid subsequent to 1919.

That defendant has received as interest, dividends, and from the sales of its capital stock assets for five years subsequent to January 1, 1918, $824,815.13.

That of the capital stock assets sold in 1920 two certain water-power sites and flowage brought $50,000 more than

the inventory value, which profit was available for dividends.

That as shown by the books of the defendant for the years 1918 to 1920 inclusive the gross profit from the sale of the capital assets and other sources was $450,598.64.

That the only dividend paid during said period was in 1919 of $55,580, and that the total dividends paid since the time of its organization in 1901 is less than $85,000.

That on account of the failure and refusal by defendant to pay dividends the capital stock owned by the original plaintiff is of no market value, although the book value thereof is approximately 300 per cent. of its par value, and that the said stock cannot be disposed of except at a very great financial sacrifice unless the court compels said corporation to pay reasonable dividends.

That the original plaintiff repeatedly offered to sell her stock to the defendant at a price very much less than the real value thereof, but that defendant has refused to purchase the same except at a price hardly more than nominal.

That the original plaintiff offered to dispose of her shares to the defendant in exchange for an equitable proportion of the assets of said company including the lands, but that the management of said company refused to entertain such proposition.

"That as plaintiff is informed and believes, said defendant corporation, with the approval, assistance, and connivance of certain of its other stockholders, has for several years past purposely so managed the affairs of said corporation as to make it appear, contrary to the actual fact, that it was unable to pay dividends to its stockholders including plaintiff, and for the purpose of rendering the stock of plaintiff therein of practically no market value and of forcing her to dispose of her said interest in said corporation at great financial sacrifice and loss.

"That as plaintiff is informed and believes, the management of said corporation by said defendant R. B. Tweedy as such president and chief executive has been and is grossly

inefficient, incompetent, and detrimental to the interests of said company.

"That as plaintiff is informed and believes, the said R. B. Tweedy as such president, chief executive, and virtual sole manager has, regardless of the interests of. said plaintiff, managed the affairs of said corporation as a family affair and apparently for the primary purpose of furnishing him amusement and recreation and to enable him to carry on the visionary and chimerical 'option lease' scheme hereinafter more specifically referred to, and to carry into effect his individual notions as to the proper methods of selling Northern Wisconsin lands and developing lands and farms in the same locality of said defendant's lands."

That although said defendant was able to rent suitable offices at a reasonable rental to conduct its business, yet for the purpose, among others, of covering up the funds of said corporation and making them unavailable for the payment of dividends and for the further purposes of discouraging the plaintiff and of inducing her to sell to said company at a great financial sacrifice, it purchased at a cost of about $50,000 a so-called office building in the city of Tomahawk, where said corporation is located and conducts its business.

That under the supervision and direction of said Tweedy the aforesaid building was constructed for the offices of defendant and others of the so-called "Bradley Allied Companies" and for offices of the so-called community nurse and community or agricultural agent and for living apartments for said Tweedy and certain of the employees of said Allied Companies, and that such building cannot be disposed of on the market except for a sum very much less than the cost thereof.

That defendant and its management, for the purpose, among others, of freezing and covering up the available funds and making them unavailable for the payment of dividends, loaned large sums of money to various persons on such terms as to make the same not readily available.

That defendant is now carrying loans to farmers and

others exceeding $60,000, which moneys under capable, efficient, and proper management should have been distributed as dividends and can now be so distributed.

That a considerable portion of the loans on outside farm and cattle lands were made without excuse or justification, and were and are inadequately secured or altogether unsecured.

That defendant is continuing to make such loans and threatens that it will so continue for an indefinite period, and that unless restrained from so doing such threat will be carried out to the great damage of the defendant and its stockholders.

As an instance of wasteful extravagance, mismanagement, and incompetency it is recited that the defendant, under the management of said Tweedy, has caused to be converted into farm lands, and cleared, the so-called Riverside farm near the city of Tomahawk, and has conducted farm operations thereon at a great loss and expense for several years last past; that over $75,000 has been expended for clearing, buildings, ditches, etc., in addition to $5,000 charged off to profit and loss on said farm, and that said farm, including its buildings and improvements, is worth not to exceed $25,000; and that defendant, in conjunction with one of the so-called Allied Companies, has attempted to operate the said farm as a demonstration farm and as an object lesson to farmers. That the loss in the operation of said farm, as shown by the books of the company, during the years 1918 to 1922 inclusive was $15,934.76, although said farm could have been leased for at least a part of the sum necessary for taxes and interest.

That the defendant and its management intends to continue to so attempt to operate said farm unless restrained by the court, and such continuing so to do will be to the great loss and damage of defendant and its stockholders.

That although in 1918 the defendant owned approximately 56,000 acres of land, it sold but 8,625 acres thereof

in the five years 1918 to 1922 inclusive, a large portion whereof was timber and flowage lands and not sold for agricultural purposes.

That during said five years defendant expended large sums of money in the attempted sale of certain of its lands to irresponsible persons who could not make payment therefor.

That during said five years about 17,000 acres were sold on option leases and about 9,845 acres of such sales surrendered. That nearly all of the land sold for agricultural purposes was for small payments down, in many cases not exceeding $10 per forty acres, and that in many cases no further payments have been made either for principal or interest.

That while the value of the assets of the defendant over its liabilities during the said five years has been over $750,000, the net profits for the same period as shown by the books have been, not including taxes on lands which were charged to capital assets, $177,726.73.

That during said five years the sales of timber and bark alone amounted to $424,461.73, all of such sales being at practically no effort or expense, and that all of such receipts were from a disposition of the capital assets and should have been distributed as liquidation dividends.

That for the purpose, in part, of covering up and making unavailable for dividends funds of the defendant which would otherwise be available for the payment of dividends, the defendant about 1917, in connection with others of the so-called "Bradley Allied Companies," embarked on a visionary and chimerical scheme of disposing of its lands on a so-called option lease plan as above specified and an agreement on the part of defendant to supply purchasers with live stock, tools, seed, and buildings, and charging such advances to the purchasers.

That in the attempted sale of its lands the defendant is pricing the same at the same amount whether sales are for

cash or with only a small payment down, and that such method results and will result, if continued, in great loss and expense to defendant, and that the great majority of the persons to whom such sales have been made are inefficient and incapable and without substantial means.

That a substantial portion of the lands owned by the defendant are sub-agricultural lands, which with the present knowledge of agriculture will not be successfully developed into farm land except possibly in large tracts and with large expenditure.

That none of the management of the defendant have had any practical experience in the sale of farm lands or in the development thereof except such as accumulated in the management of the so-called Allied Companies, and that defendant has not in its employ and has not attempted to employ persons experienced in the sale of lands in Northern Wisconsin.

That, as plaintiff is informed and believes, the so-called option lease scheme is one which has never been thoroughly tried out and where partly put into operation has proved unsuccessful.

That, as a further instance of the alleged incompetency and inefficiency in the management of the defendant, it is alleged that the company has expended large sums of money in the construction of buildings for dwellings and stables on its lands for the alleged object of rendering said lands more easily salable, and that the amount carried on its books as the cost price of such buildings is over $22,000; that said buildings are inefficiently and cheaply built and unsuitable for such purpose.

That defendant's management has engaged in the business of dealing in live stock, feed, seed, building materials, etc., and has purchased and kept for rental to the purchasers of the company's lands and other settlers, horses and farm implements.

That defendant's management purposes to continue for an

indefinite period, as plaintiff is informed and believes, in such business, although the same has been and is inefficient and incompetent and has resulted in enormous losses to the defendant and will so continue.

That the grand total loss of the Allied Companies for the four years 1919 to 1922 inclusive is over $75,000, of which about $45,000 is charged to defendant.

That the defendant in connection with the other companies has up till August, 1922, at a cost of $10,000 per year, and since said date at its own expense, maintained a so-called community nurse and a so-called community or agricultural agent, paying each of said persons large salaries for the ostensible purpose of assisting the purchasers of the lands of said defendant corporation. That such scheme and plan has been and will be wasteful, extravagant, and unnecessary and has and will cause great and unnecessary loss.

The so-called Allied Companies consist, in addition to the defendant, of the Bradley Company (against which a similar action has been brought and which is decided herewith), the Bradley Estate Company, Land, Log & Lumber Company, and Tomahawk Lumber Company; that the original plaintiff owned stock in said Allied Companies other than the Bradley Estate Company and Tomahawk Lumber Company.

That the said Allied Companies conduct their entire business and affairs substantially as one.

That on August 1, 1922, the defendant, though alleged to be a liquidating company and the owner of approximately 49,000 acres of land, in pursuance of the general policy of operating in connection with the other Allied Companies and for the purpose, among others, of so disposing of and placing its assets that payment of dividends might be indefinitely deferred and plaintiff deprived of her rights, and of still further postponing the ultimate and complete liquidation of defendant, in form purchased from the other com-

panies substantially all of their timber and lands, consisting of approximately 23,000 acres, assuming in form and in exchange therefor certain liabilities of said other companies and transferring to such Allied Companies shares of defendant's stock at its book value.

That such lands so acquired are of the same general character and quality as those immediately theretofore owned by defendant, but less well located, more difficult to dispose of, and resulting in the postponement of the final liquidation of the defendant.

That defendant's management give out that it will be necessary and that they intend in the future to borrow large sums of money to carry on the said option lease scheme of selling the said lands, and that the defendant will not be in a position to pay dividends either from earnings or from the sale of capital assets for many years.

That the transfer of assets from the Bradley Company to the defendant, the payment therefor with stock, and the method of keeping the books of account of the so-called Allied Companies, the method of conducting their business and affairs practically as one concern, are designed for the purpose, among others, of making the control and management of the defendant and its Allied Companies so intricate as to render supervision and control by the courts of the interests of stockholders difficult if not impracticable, and for the further purpose of making it appear that the defendant, instead of being a liquidating concern as is the fact, is actively engaged in conducting a going business, and that the transfer to the defendant about August 1, 1922, as aforesaid and the payment therefor in stock was made in part for the purpose of furnishing an apparent justification for the negotiation of further loans. That the original plaintiff verily believed that if the management of the defendant is permitted to continue to borrow money in large amounts for the purpose of making advances and loans to the purchasers of its lands and others, the liquidation of the

defendant will be deferred for at least fifty years and the payment of dividends by way of earnings or liquidations also greatly deferred.

That the option lease plan will, if continued for any considerable time, result in the insolvency of the defendant.

That in case of a judicial sale at the instance of the creditors of the defendant under the circumstances aforesaid the owners of the majority interest in said defendant would be in a position to purchase the assets thereof and the original plaintiff would not be in such position.

That the defendant could have sold and disposed of its land at a reasonable profit and at much less expense than it has incurred, but nevertheless has priced and is pricing its lands at such exorbitantly high figures as to make it difficult if not impossible to sell the same, with the endeavor to cover up and minimize the large and unwarranted expense and cost of placing such lands on the market. That, notwithstanding the management of the defendant well knew that the lands could be disposed of in bulk or in groups to dealers and otherwise at very much less cost and expense than under the option lease plan, it has failed and neglected to employ such other methods, and the method of deferred payments spread over a long period is in part with the object of delaying the collections and making it appear impracticable to distribute dividends.

That owing to the sale in combination with the other companies, the books of the defendant do not show the true cost of selling the agricultural land.

That defendant has been the owner of large quantities of standing timber which under efficient management could have been disposed of for full value for substantially cash, but that the said management has disposed of certain of such timber on credit and never received any payment therefor, to the loss of the defendant and its stockholders.

As a further instance of gross mismanagement of defendant, it is alleged that large amounts of standing timber

were logged at a cost in excess of the market value of the logs and that 30,000,000 feet of logs were so cut and logged at a cost of over $10,000 more than the market value produced, and that in addition to such loss such logs were manufactured into lumber by the aforesaid Tomahawk Lumber Company, also dominated by said Tweedy. The value of the stumpage to at least $122,000 was lost to the defendant through such logging and sawing operations.

That defendant is the owner, subject to sale on land contract to the city of Tomahawk, of the community building above referred to, and that the interest therein belonging to defendant could be readily sold for the face value thereof and the proceeds distributed as dividends, and that the original plaintiff would be willing and glad to accept a transfer of said interest by way of a dividend.

That defendant has borrowed in excess of $50,000 during the preceding six months and that such has been borrowed and it is the plan of the management to continue to borrow further large sums for the object, among others, of making it appear that it is not in a position to pay dividends, and that it will continue to so borrow and invest the money in said option lease scheme unless restrained by the court.

That while $10,000 per year would be a liberal amount for conducting the business of said corporation it has paid out during the five years aforesaid over $220,000 more than such an allowance.

That plaintiff has no adequate remedy at law.

The prayer for relief was (1) that the court restrain the defendant from borrowing, directly or indirectly, further moneys for the purpose of making loans or advances to purchasers pending the trial; (2) that a receiver be appointed for the purpose of managing the affairs of the defendant, with instructions to sell and dispose of the property, convert the same into money, pay the debts, and distribute the net remaining assets among the stockholders; (3) that the defendant be required to pay to the plaintiff

such sum and within such time as may seem proper as dividends on her shares, and that the defendant be required to pay dividends semi-annually thereafter; (4) for such other and further judgment, order, or relief as may be just and equitable.

The defendant interposed a demurrer upon the grounds that it appears upon the face of said complaint (1) that it does not state facts sufficient to constitute a cause of action; (2) that the omission of the directors and officers of the defendant is a defect of parties defendant; (3) that the omission of defendant's stockholders is a defect of parties defendant; (4) that several causes of action have been improperly united.

The demurrer being overruled, the defendant appeals.

For the appellant there was a brief by *Fawsett & Smart* of Milwaukee and *R. T. Reinholdt* of Tomahawk, and oral argument by *Mr. Edward M. Smart* and *Mr. Reinholdt.*

*G. M. Sheldon* of Tomahawk and *Francis E. McGovern* of Milwaukee, attorneys, and *F. J. Smith* of Merrill, of counsel, for the respondents.

ESCHWEILER, J. The demurrer to the amended complaint should have been sustained on several grounds.

It is quite clear that no proper showing is made for the appointment of a receiver as prayed. It is asserted that the present liabilities of the company are not over $100,000, and that the real value of defendant's property is at least as great as that shown by its books, and that amount is alleged to be over $1,600,000 on a capital stock of $519,000.

It is alleged the company has paid about $56,000 as a cash dividend in 1919 and no other dividends during the five years preceding the commencement of the action. One of the principal if not the principal purpose of the action is based upon the theory that the corporation, now having ample resources, is in such a prosperous financial condition that the court should compel the payment of present and

future dividends. The allegations to the effect that the company is in position to and should be compelled to pay present and future dividends is a negation of one of the most controlling considerations, namely, insolvency, upon which a court undertakes to assume control of the management and affairs of a corporation.

There are no allegations here of fraudulent mismanagement or diversion to their own use of its funds or property by the directors or officers, as in *Goodwin v. von Cotzhausen,* 171 Wis. 351, 177 N. W. 618. That the business policy of the majority is contrary to the judgment or wishes of the minority is not sufficient warrant for the appointment of a receiver. We are of the opinion, therefore, as was the trial court, that the complaint does not state facts sufficient to require the appointment of a receiver.

Giving the complaint the liberal construction in its favor that we are required to do, we are nevertheless of the opinion that not sufficient facts are alleged from which a court of equity can properly say that there is such an abuse of discretion by those responsible for the management of the company as to now compel the payment of dividends.

The complaint shows a corporation which, in the twenty years or more of its existence, has apparently increased the book value of its property threefold; whose holdings now and for a number of years have been all substantially real estate or interests therein arising out of the disposition of such property; and that such real estate is practically all unimproved and mostly all cut-over lands in the northern part of this state. It also shows that the control and management of the corporation by those having or representing the large majority of the stock, contrary to the wishes and judgment of the minority, has embarked upon a policy of slow rather than rapid disposition of its assets.

The distinction must be noted at the outset between the situation here disclosed of a corporation apparently organized for that purpose, and certainly for the period concern-

ing which complaint is made, engaged in the rather static process of the ownership of real estate, and that presented by a manufacturing or mercantile corporation; the very nature of the business and purpose of existence of such latter requiring an incessant change of capital, material, and labor into cash and back again, as in manufacturing concerns such as were involved in cases like *Dodge v. Ford Motor Co.* 204 Mich. 459, 170 N. W. 668, 3 A. L. R. 413; *Seitz v. Union B. & M. M. Co.* 152 Minn. 460, 189 N. W. 586, 27 A. L. R. 293; *Rockwell v. Rockwell Mfg. Co.,* E. Dist. of Wis., quoted from in respondents' brief.

No wrongful investment by defendant is charged as to the original purchase of the lands now held or those heretofore sold. It is apparent that the assets have been increased to over three times the capital stock originally invested by reason of the wisdom of such original purchases, or the management of the same, or both. A policy so resulting cannot well be claimed to have violated any substantial rights of the stockholders; but it is contended on plaintiff's behalf, as a minority stockholder, that there must now be a change from a policy of holding its real estate to one of immediate sale and disposition of them or the securities held.

The practical and substantial difference between a corporation existing for the purpose of constantly turning over its capital assets for the profits accruing thereby, even though it trades in real estate, and one whose purpose is to hold, improve, and finally dispose of real estate, is discussed in *Miller v. Payne,* 150 Wis. 354, 378, 379, 136 N. W. 811, where it is pointed out that mere enhancement in value of such assets may be considered principal rather than income.

Reading the history of the corporation from the allegations of the complaint, it is manifest that the purpose of the corporation has been of the holding rather than the trading kind. Especially is this so in view of the allegations that it now has but $30,000 cash on hand with a large

number of contracts for sale of its real estate, which are constantly being dropped because of the inability of purchasers to carry on with them; that much of said land is sub-agricultural and cannot be developed into farming lands except in large tracts and with large expenditures of capital. From the situation here disclosed we cannot and ought not to say that there must be a change of policy because a minority stockholder wishes an immediate distribution of that which may be considered, within the field of reasonable discretion, assets, rather than net profits.

There is here presented, then, but a question of policy, as to which the voice of the majority must be respected, we being unable to say from the complaint as a whole that there is shown bad faith or wilful abuse of management discretion and there being no positive fraud alleged. Its present course is a lawful one, pursued by lawful means and within its corporate powers, even though it may not be the best policy or wisest course. The courts refuse to interfere in such situations. *Figge v. Bergenthal,* 130 Wis. 594, 624, 109 N. W. 581, 110 N. W. 798; *Estate of Wells,* 156 Wis. 294, 313, 144 N. W. 174.

The same rule is held elsewhere. *Fernald v. Frank Ridlon Co.* 246 Mass. 64, 140 N. E. 421; *Mobile T. & W. Co. v. Hartwell,* 208 Ala. 420, 95 South. 191; *Richter & Co. v. Light,* 97 Conn. 364, 116 Atl. 600.

We are therefore compelled to say, contrary to the view of the trial court, that the demurrer should have been sustained on the ground that no sufficient showing has been made to require the present or future payment of dividends.

Assuming that the complaint had been held sufficient to establish the propriety of compelling payment of dividends, still the demurrer should have been sustained because the directors were not made defendants.

In *Wood v. Union Gospel C. B. Asso.* 63 Wis. 9, 22 N. W. 756, an action to procure the cancellation of stock alleged to have been issued by the board of directors with-

out lawful authority, it was said, citing the following case, that the directors, though proper, were not necessary parties. *Dousman v. Wis. & L. S. M. & S. Co.* 40 Wis. 418, was an action to compel the giving to plaintiff of his proportion of a new issue of stock already provided for by the directors. It was there said that the action was against the corporation and not against the directors personally, who may be changed from time to time. *Wells v. Green Bay & M. C. Co.* 90 Wis. 442, 454, 64 N. W. 69, held that in an action to compel delivery of a certificate of stock, after the directors had acted, they were proper though not *necessary* parties to obtain a discovery under sec. 4096, Stats.

But in *Morey v. Fish Bros. W. Co.* 108 Wis. 520, 84 N. W. 862, an action in part to have a dividend declared, it was said (p. 529) that the question whether the directors were necessary parties to obtain such relief may be an important one, but that it did not there arise on the record.

None of the three earlier cases *supra,* involving as they did questions as to corporate stock and rights accruing *after the directors had acted* upon the matter of the issuing of the stock and after the rights of the parties had become fixed, are controlling here.

That the primary managing power and duty as to the stock, property, affairs, and business of a stock corporation, such as is the defendant, is vested in the directors and not the stockholders, is declared by statute. Sec. 180.13. That such statutory declaration controls rather than any expression to the contrary by the stockholders was determined in *State ex rel. Badger Tel. Co. v. Rosenow,* 174 Wis. 9, 182 N. W. 324, holding that the officers must be chosen by the directors and cannot be by the stockholders though so provided by the articles and by-laws.

Furthermore, this precise power of declaring dividends is very carefully provided for by the legislature. Sec. 182.19, Stats. This legislative provision, among other things, expressly prohibits the payment of dividends until

the capital stock has been fully paid in and that thereafter none shall be declared or paid by the directors except out of the "net profits properly applicable thereto," and which shall not in any way impair or diminish the capital; and it further provides that if the directors of any corporation shall pay any such dividend when the corporation is insolvent or in danger of insolvency, not having reason to believe that they were complying with such provisions, they shall be jointly and severally liable to the creditors. It also provides that any corporation which has invested or may invest its own earnings or income or any part thereof in any permanent additions to its property, or when the property shall have increased in value, may lawfully declare a dividend upon its capital either in money or in stock to the extent of such investment or such increase. The liability of the individual directors under this statute has been considered in *Williams v. Brewster,* 117 Wis. 370, 93 N. W. 479.

That there must be an exercise of the good-faith discretion of the directors in declaring a dividend before there can be such a segregation of the corporate funds that the stockholder becomes entitled to his proportionate share of such segregation as against the corporation itself, and that then, and not until then, his right against the corporation arises, has long been the rule. *New York, L. E. & W. R. Co. v. Nickals,* 119 U. S. 296, 304, 307, 7 Sup. Ct. 209; *Gibbons v. Mahon,* 136 U. S. 549, 558, 10 Sup. Ct. 1057; *Southern Pac. Co. v. Lowe,* 247 U. S. 330, 338, 38 Sup. Ct. 540; *Thatcher v. Chicago Rys. Co.* 297 Fed. 466; *Knight v. Alamo Mfg. Co.* 190 Mich. 223, 157 N. W. 24, 6 A. L. R. 789; *Spear v. Rockland-Rockport L. Co.* 113 Me. 285, 93 Atl. 754, 6 A. L. R. 793; *Burden v. Burden,* 159 N. Y. 287, 308, 54 N. E. 17.

It is quite significant also that in these cases, in which just such relief was asked as here, viz. to compel the declaration of dividends, the directors or officers were made defendants so that the question of their being necessary par-

ties was not questioned. It was so in the following cases: *Dodge v. Ford Motor Co.* 204 Mich. 459, 170 N. W. 668; *Seitz v. Union B. & M. M. Co.* 152 Minn. 460, 189 N. W. 586; *Fernald v. Frank Ridlon Co.* 246 Mass. 64, 140 N. E. 421; *Spear v. Rockland-Rockport L. Co.* 113 Me. 285, 93 Atl. 754.

In view, therefore, of the situation in which the directors of a corporation are placed by statute and decisions both as to the corporation itself and as to stockholders or others interested and their individual liability for any violation of the statute controlling the payment of dividends, we are of the opinion that in an action brought to compel the payment of a dividend, it appearing that the directors have not acted or have refused to act in that regard, the directors themselves are necessary parties and entitled to be heard.

This disposition of the matter renders it unnecessary to discuss other questions presented and argued.

*By the Court.*—Order reversed, and cause remanded with directions to sustain the demurrer.