JOHN A. McNAB, Appellant, *v.* THE McNAB & HARLIN MANUFACTURING COMPANY and Others, Respondents.

*Corporation — its rate of dividend and its surplus discretionary with its trustees — estoppel of a stockholder — a legal investment resulting in a loss — trustees voting themselves an increase of salary.*

In an action brought by a stockholder of a corporation, formed under the general manufacturing act of 1848, to secure, among other things, a division of its surplus, it was shown that said corporation was prosperous and paid extraordinary dividends; that its trustees had employed a large part of the surplus in question in the business of the corporation, and that such use of it was deemed by them prudent and advantageous.

*Held,* that the court would not interfere.

That the rate of dividend to be paid, and the amount of surplus to be retained by a corporation, must rest in the fair and honest discretion of its trustees.

The company was formed to manufacture brass work, but had found it profitable, in connection with its proper business, to deal in iron pipe as well. The plaintiff had never objected to the business being carried on in this manner, and the dividends which had been paid to the plaintiff were in part the proceeds of the iron-pipe branch of the business.

*Held,* that his receipt of said dividends estopped him from raising the question as to whether the iron-pipe business was *ultra vires.*

The company had loaned money to a foreign corporation, and this act was charged to have been *ultra vires.* Thereupon the president of the company offered to take the stocks and bonds which had been taken to secure this loan, and assume the indebtedness himself, to which the plaintiff refused to consent.

*Held,* that the plaintiff was not, under these circumstances, in a position to maintain any suit in equity based upon the fact of such loan having been made.

In order to escape taxation the company, at a period some years before this action was brought, invested its moneys in United States bonds; subsequently the bonds were sold at a loss.

*Held,* that as the transaction was legal and was a past one, and as it was not claimed that it was proposed to repeat it, it afforded no ground for equitable interference.

The company had six trustees, who were the owners of almost all its stock. A meeting of five of them was held, at which the salary of each as an officer or employee was increased. Four trustees voted upon each resolution, but in no case did the trustee profiting by the increase vote for the resolution making his salary larger. It did not appear that the salaries as increased were excessive.

*Held,* that their action was legal. (Daniels, J., dissenting upon the last point.)

Appeal by the plaintiff John A. McNab from a judgment, entered in the office of the clerk of the city and county of New York on the 10th day of June, 1891, dismissing his complaint, with costs.

with notice of an intention to bring up for review upon such appeal an order, entered in the same office on the same day, granting to the defendants an extra allowance of $250 after a trial at the New York Special Term.

*Artemus V. Smith,* for the appellant.

*Frederic R. Coudert* and *Frederic G. Dow,* for the respondents.

Daniels, J. :

The McNab & Harlin Company, defendant, was incorporated on or about the 28th of April, 1871, under the laws of this State providing for the incorporation of manufacturing companies. Its business was declared to be that of manufacturing brass and iron goods for sale, and since its incorporation it has carried on that business. The plaintiff was the owner of eight shares of its capital stock, which consisted of 150 shares of $1,000 each, and the other defendants were officers and shareholders in the company. After its formation, and in or about the year 1877, the company became unable to pay its debts, and a proceeding in bankruptcy was instituted to discharge it from its debts. Soon after the proceeding was commenced the defendant Harlin became the president of the company. He owned seventy-eight shares of its capital stock, and compromised the debts owing to the creditors of the company. The agreement for the compromise was to pay seventy-five per cent within the period of three years. After he took charge of the affairs of the company as its president, and under his management the business became prosperous, and the seventy-five per cent was paid to the creditors, and afterwards they were paid the additional sum of twenty-five per cent, making payment of their demands in full. The prosperity of the company continued, owing to the judicious management of the president, and for eight years prior to the time of the trial, which took place in May, 1891, its net profits amounted to the sum of $100,000 a year, or a sum slightly in advance of that amount; and from the year 1881 to the year 1891 it made and paid a dividend on its shares amounting to an average exceeding the sum of twenty-five per cent; and in addition to the dividends made in this manner it accumulated a large surplus, which was mainly used in its business, but to the extent of about one hundred thousand dollars was

in its deposit accounts. And it was stated by the treasurer in his evidence upon the trial that there was at that time an actual surplus owned by the company amounting to the sum of $152,209, and the plaintiff, whose action was brought to secure the distribution of the surplus by way of dividends, alleged and claimed that a still larger surplus had been earned and was owned by the company; and it was one of the principal objects of the action to secure the division of this surplus by way of dividends among the shareholders. But it was proved in the course of the trial that the surplus maintained by the company was profitably employed in purchasing the material used by it in the course of its manufactures, and that it was considered for the best interests of the company not to divide this surplus among the shareholders. The directors, in restricting the dividends as they did, seem to have been impressed with the propriety of this conviction, and the dividends were accordingly limited to such amounts, from year to year, as did not intrench upon the large surplus which had been earned and secured. In their action upon this subject the trustees appear to have exercised the judgment which they deemed to be most consistent with the prosperity and maintenance of the interests of the company; and the statute under which the incorporation took place delegated the authority to the trustees to manage the stock, property and concerns of the company (2 R. S. [6th ed.], 503, § 29), and to what amount the dividends shall be made, and the extent of the surplus which the interests of the company may require to be retained, are within this delegation of authority confided to the trustees. And it was so regarded in *Williams* v. *Western Union, etc., Company* (93 N. Y., 162), where it was said, with the apparent approval of the court, that "when a corporation has a surplus, whether a dividend shall be made, and if made how much it shall be, and when and where it shall be payable, rest in the fair and honest discretion of the directors, uncontrollable by the courts." (Id., 192.) And no broader principle than this was either stated or sanctioned in *Scott* v. *Eagle Fire Company* (7 Paige, 198), or in either of the other authorities which have been brought to the attention of the court. The principle to be applied is that which shall secure the observance of good faith on the part of the directors, and this principle was neither denied nor intrenched upon in *Seeley* v. *New York, etc.,*

*Bank* (8 Daly, 400), which was affirmed in 78 New York, 603. The trustees are chosen by the shareholders, to exercise their best judgment, depending upon their knowledge of the affairs and condition of the company, and when that has been done, the courts do not undertake to control their action, although they might differ in their views of the proper management to be adopted and followed. No reason has been disclosed by the case for doubting or impeaching the good faith of these trustees. Neither can it be affirmed justly, in view of the large business carried on by the company, that they acted unreasonably or capriciously in declining to order a larger dividend than that which was, in fact, paid to the shareholders.

It appeared by the evidence that the company during the time it had been engaged in business, and the partnership which preceded it, had dealt in iron pipe. This pipe was purchased by it and sold in the course of its business, and it ordinarily had on hand iron pipe of the value of about thirty thousand dollars. This iron pipe was purchased and sold by the company as an adjunct to its business of manufacturing and selling its brass work, and it was considered by the persons in charge of the affairs of the company that it was judicious to unite the sale of the iron pipe with the brass work for the purpose of fulfilling the orders received by it and completing the purchases made by its customers. The evidence proved the fact to be that the sale of the brass work and the iron pipe went very much together, and that the pipe became necessary to fill the purchases of the company's customers; and it was stated in the evidence of Mr. Harlin, the president of the company, as a witness for the plaintiff, that this course of dealing was never objected to by the plaintiff in this suit, and that a large part of the profits of the company was derived from the sale of the iron pipe, and that no losses had resulted to the company from its dealings in this manner; and these facts apparently deprived the plaintiff of the ground of complaint made by him against the officers of the company for dealing in this manner in iron pipe. Whether the dealings in the iron pipe were beyond the powers of the company, as it was incorporated, it is not necessary to inquire for the reason that the acquiescence of the plaintiff in this part of the business, and the acceptance by him of the profits derived from it through the dividends made and received by him, and which has not been denied

by his evidence, preclude him from maintaining this part of his action. (*Holmes, etc., Company* v. *Willard,* 125 N. Y., 75.) As to these dealings he has no standing in court which will enable him to restrain the company from their continuation. They have been carried on with his implied approval too long, and the advantages from it have been enjoyed by him in too many instances to permit him to question the propriety of this part of the business.

It further appeared by the evidence that the Sumpter and Charleston Railroad Company had become indebted to the McNab, etc., Company in the sum of about one hundred and four thousand dollars for moneys which had been loaned to the president of the company when it existed under another name, and for rails and fastenings which had been sold by the McNab Company to the railroad company; and this was made a part of the plaintiff's cause of action for the reason that the McNab Company had no authority to loan money in this manner, or to participate in the sale of railroad rails and fastenings. And, in this respect, the plaintiff appears to be correct in the position taken in his behalf for the maintenance of so much of the action. But it appeared on the part of the defense, in answer to this part of the case, that Mr. Harlin, the president of the company, had offered to take the bonds and stock obtained from the railroad company for this indebtedness on his own account, and to charge himself with the amount of the indebtedness. That was stated to be sufficiently secured to render the indebtedness good, and no evidence was given which proved the fact to be otherwise; but the plaintiff did not consent to this disposition of the bonds and stock of the railroad company. He did not agree that Mr. Harlin should take them and pay the company the amount of this indebtedness; and after failing to accept this proposal, which would have thoroughly protected the McNab Company against loss, he was deprived of all ground of complaint as to this part of the case. No more could be required than that the officer, through whose management this indebtedness had been created, should take the debt from the company and reimburse it to the extent to which its moneys had been used in the creation of the debt. As to this part of the case, the plaintiff's action has accordingly failed.

In 1887 the company purchased $350,000 of United States bonds and retained them for a period of a month or upwards, when they

were sold at a loss of about fifteen hundred dollars, and this purchase is made a substantial ground of complaint by the plaintiff in support of his action; but the evidence indicates the fact to be that. these bonds were purchased to avoid taxation upon the surplus owned by the company, and that they were used for that object. The law permitted the bonds to be purchased, as they were exempt from taxation, to protect the company against the payment of taxes to. that extent. The transaction accordingly was not an unlawful one,. although it resulted in failing to realize a profit to the company.. But the purchase of these bonds, as well as the dealings with the: South Carolina Railroad Company, were completed prior to the time of the commencement of the plaintiff's action, and it was not averred that there was any disposition on the part of the company, or of its. managing officers, to make a similar purchase in the future, or to increase the indebtedness owing to the company from the railroad company. Those were past transactions, and there was nothing of them left which required correction in any respect by the plaintiff's. action. If the company had threatened to continue these dealings,. or to extend those with the railroad company, it would have been entirely proper for the plaintiff to intervene by his suit to prevent that repetition; but it does not appear, either by the pleadings or the evidence, that there was any intention on the part of any person to repeat these dealings, and they, therefore, supplied no foundation for the plaintiff's suit, which is an action in equity.

At the meeting of five of the trustees in May, 1887, resolutions were proposed and adopted increasing the salary of Mr. Harlin, the president, from five to sixteen thousand dollars, and of the defendant Kyle, from $2,500 to $6,500, and of the defendant Maclay, from the sum of $1,800 to $3,200, and also making an increase in the salary of the defendant Fiefield, but which, however, was not objected to by the plaintiff; and creating a salary in favor of the defendant Merriam in the sum of $700. The resolutions providing for these salaries. were adopted by four of the trustees. being a majority of the six trustees of the company, voting in favor of each of the resolutions,. but neither one of the trustees voted for the resolution by which he: himself was to be benefited.

But as the resolutions came up for consideration the other trustees who were present voted for the adoption of each resolution.

Each one of the five trustees was present at the meeting where the resolutions were proposed and adopted, and the unanimity with which they were accepted is consistent with no other view of the facts than that it had been arranged before the resolutions were proposed. that they should be proposed and adopted in favor of each one of the five trustees in this manner, and that each of the four trustees voted for the resolution in favor of the other trustee upon the understanding that a similar vote was to be given upon each resolution providing for the salary of each of the other trustees, and after the adoption of these resolutions the salaries as they were so provided were paid to and received by these trustees. If each resolution had been voted for by the person intended to be benefited by it, the proceeding would have been unauthorized and illegal (*Butts* v. *Wood*, 37 N. Y., 317; *Paine* v. *Irwin*, 16 Hun, 390; *Wardell* v. *R. R. Co.*, 103 U. S., 651; *Atlanta, etc., Co.* v. *Andrews*, 120 N. Y., 58; 8 N. Y. St. Rep., 157), and, in judgment of law, the case would be precisely the same if the trustees; as they appear to have done, agreed before the vote was taken that the votes should be given in this manner, and that all the trustees who were present, except the one whose salary was to be provided for, should vote for each of these resolutions. The agreement was the same in its effect as it would have been if each of the five trustees had voted for each of the five resolutions, and that the law would not sustain them in doing, for a trustee of a company cannot by his own vote benefit himself in this manner; and whether the vote was given in form or its result was provided for in a preceding agreement could not change the case. These resolutions were, therefore, unauthorized, and all the persons benefited, even though they received no more than they were entitled to have, with the exception of the treasurer, are liable to refund the excess received under the authority of the resolutions to the company. The plaintiff first discovered at the meeting in 1888 that these salaries had been advanced and provided for in this manner, and then he protested and objected to the changes which had been made; and, so far as his action has been brought to set aside these resolutions and to avoid the salary and the increased salaries which they provided for, the action seems to have been well founded; and as the facts all appear in the conclusions reached by the court the judgment in the case should be so far modified as to

declare these resolutions unlawful, and to require the officers who have received the additional salaries under them, with the exception of the treasurer; and also to require of Merriam to return the moneys received by them under the authority of the resolutions to the company, and with that modification the judgment should be affirmed; but, inasmuch as this is no more than a small portion of the object of the plaintiff's action, and it cannot be sustained in other respects, the modication should be without costs.

VAN BRUNT, P. J. :

I dissent from the conclusion of Mr. Justice DANIELS that the judgment in this case should be modified. There is no evidence whatever that the salaries proposed to be paid were in the slightest degree excessive.

The administration of the present officers of the company had been eminently successful, and merely because they were directors of the company they are not precluded from being reasonably paid for their services. I think that the judgment should be affirmed, with costs.

BARRETT, J. :

I concur with the presiding justice. There was not a particle of evidence that the resolutions, increasing the salaries, were the result of a combination of any kind — fraudulent or innocent — or of preconcerted action upon the part of the trustees. These resolutions were adopted by trustees who were themselves stockholders, and who owned nearly the entire capital stock of the company. In fact, the plaintiff owned but eight shares out of one hundred and fifty, and he was the only complaining stockholder. It is difficult to believe that his complaint on this head was made in good faith. For it is entirely clear from the testimony that he believed that the president was most inadequately compensated, and that that officer's salary should be largely increased. If the action of the trustees, under all the circumstances of this case, was in this particular illegal, then it is impossible legally to afford adequate compensation to the officers of a corporation where an inadequate salary has once been fixed. The plaintiff's objections on this head are not only untenable, but are seemingly made in a spirit of mere antagonism to the

trustees resulting from differences of opinion as to the dividends which it has been deemed wise to declare, and also from other differences of opinion as to the proper management of the company. The manner in which this company has been lifted from bankruptcy into prosperity, and its splendid condition to-day, furnish a complete justification of the course pursued by Mr. Harlin, and afford conclusive evidence of his good judgment and that of the trustees, with regard to all the matters complained of. These facts should protect them from attacks founded upon mere personal feeling.

The judgment should be affirmed, with costs.

Judgment affirmed, with costs.