Hopkins, Appellant, *v.* Union Canvas Goods Company.

Argued October 7, 1931.

Before TREXLER, P. J., KEL-
LER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Morris Wolf* of *Wolf, Block, Schorr and Solis-Cohen,* and with him *Ralph B. Umsted* of *Umsted & Wolfe,* for appellant.—The court of equity had the right to require the directors to declare and pay dividends: McLean v. Pittsburgh Plate Glass Co., 159 Pa. 112; Wheeler Beers v. The Bridgeport Spring Co., 42 Conn. 17.

*C. Wilfred Conard,* and with him *J. Myron Shimer,* for appellee.—The question of dividends on corporate stock is committed largely to the discretion of the directors and while their action may be reviewed by

the courts, it will be set aside only in case of bad faith, or when arbitrary, or manifestly erroneous, or such as to constitute an abuse of discretion or disregard of official duty: Pardee v. Harwood Elec. Co., 262 Pa. 69; City Bank F. T. Co. v. Hewitt Realty Co., 257 N. Y. 62.

OPINION BY TREXLER, P. J., January 28, 1932:

The plaintiff is a stock holder of the defendant corporation and prays in his bill that the court order the directors of the defendant corporation to declare a reasonable dividend from the surplus of the corporation. He asserts that there has been no dividend since February 12, 1923, and that there is a large surplus available and that the directors have refused his demand to declare such dividend.

The declaring of a dividend is usually within the discretion of the directors who are the managers of the corporation, duly elected by the stockholders. Their duty in this regard was defined in the present instance by the by-laws of the corporation, Article 9, which states: "The board of directors may declare dividends to be paid out of the moneys or securities in the treasury of the company, not required for other purposes, when in their judgment, it will be proper and for the best interests of the company."

True it is that the action of the directors in refusing to declare a dividend is reviewable by the court, "but it will be set aside only in case of bad faith or when arbitrary, or manifestly erroneous, or such as to constitute an abuse of discretion or disregard of official duty": Pardee v. Harewood Electric Co., 262 Pa. 68.

"The affairs of a corporation are managed by a board of directors, who, in the first instance, are to determine whether profits have been earned and whether, in their discretion, they ought to be divided

among the shareholders'': Goetz Est., (No. 1), 236 Pa. 630. In the present case, there is no allegation of fraud or of bad faith or of extravagant management in the bill. It remains to be considered whether the directors plainly abused the discretion invested in them by arbitrarily or erroneously refusing to declare a dividend.

The company was organized in 1921 with a capital of $5,200. It was what is usually termed a close corporation, the stock being held by practically three persons. Its business was the manufacture of canvas goods. The plaintiff joined the company as an employee in January, 1922, at which time the affairs of the company were in an unsatisfactory condition. During the early part of 1923, prospects were brighter and arrangements were made so that the plaintiff became the provisional holder of seventeen shares of stock and was made a director and in March, 1926, he became the absolute holder by an arrangement joined in by the other directors whereby a 50% dividend was paid and $850 additional salary given to him, making a total of $1,700 which was used for the payment of plaintiff's stock. Later, in the fall of 1927, Hopkins severed his connection with the company, and resigned as vice-president and sales manager. Before doing so, he attended a meeting of the board on September 22, 1927, and offered a resolution demanding a dividend of 200% be declared and paid. This was refused. The company had prospered from the small beginning of $5,200 capital in 1921 and had accumulated a surplus of $21,780.09, and a cash balance of $8,139.65, against which were an unliquidated income tax claim and notes payable of $1,924.72. The sales in 1927 amounted to $117,000.

It is apparent as suggested by the lower court that with this volume of business, the surplus was really capital, for $5,200, the original investment was mani-

festly too small to suffice for an enterprise of such magnitude. We quote from the opinion of the lower court:

"The directors realized the need of meeting this growth of the company's business, and they testify that they had a 'program' of moving from their rented quarters into a more commodious building, possibly of acquiring a building of its own, and of purchasing additional and new machinery. Their expanded business also required larger investments in raw material and a larger payroll. They resolved upon a dividend of six per cent upon the stock, that is the investment of the stockholders (which they declared), and upon retaining the rest of their surplus to carry out the above plan. The plaintiff's bill prevented this up to this time."

"As to dividends declared, it is uncontradicted that the company has declared 56 per cent in dividends in two years: 50 per cent on July 18, 1926, and 6 per cent later. The bill was filed on October 18, 1927."

"It is not sufficient to allege a set of figures, or a ratio of authorized capital to surplus, and then throw the burden upon the court of fixing a dividend. The primary duty is on the directors. The court cannot usurp their function unless they are charged with impropriety and proven to have been guilty of it."

"It cannot be said that the directors were arbitrary in their action. Indeed, the bill does not charge it. The situation had not changed since the annual meeting of the year, the usual time for declaring dividends. The plaintiff was then a director and he did not propose a dividend. When the subject was later brought up the directors considered it and declared a dividend of six per cent. They are not to be accused of arbitrary action simply because they negatived plaintiff's motion to declare a 200 per cent dividend. They give what on the face of them appear to be excellent reasons

for their action. With such reasons, they are not to be accused of arbitrariness, simply because the plaintiff disagrees with them, or rather because the plaintiff has changed his mind during the year about the policy of the company. It is to be noted that the only dividend he asked for was 200 per cent, on the face of it absurd, because it would have taken $10,400 out of the treasury, and they had only $8,000 cash. They would have been obliged to borrow money to pay it. No other rate was suggested by him.''

We think these extracts from the opinion of the lower court fully justify its action in dismissing the bill and that further discussion is unnecessary.

The decree of the lower court dismissing the bill is affirmed; the plaintiff to pay the costs.