BARROWS *v.* J. N. FAUVER CO.

1. NEW TRIAL—ACCOUNTING—CORPORATIONS—STOCKHOLDER'S SUIT—
SURPLUS.

New trial should have been granted in stockholder's suit for
accounting upon defendant's motion therefor because of
change of business conditions, where bill was filed in August,
1933, and decree was entered in April, 1935, where character
of relief prayed, particularly as to distribution of surplus,
must be based upon present, actual and probable future condi-
tions and corporate needs and not on conditions no longer
existent.

2. ACCOUNTING—EVIDENCE—CORPORATIONS.

In stockholder's suit for accounting against corporation and its
president, record *held,* to justify award to plaintiff of two
items of $49.27 and $40 but not balance of claim.

3. CORPORATIONS—PRESIDENT'S SALARY—EVIDENCE.

Under undisputed testimony in minority stockholder's suit for
accounting and record devoid of evidence of fraud on part of
president of corporation, salary paid him *held,* not unreason-
able or excessive.

4. SAME—OFFICERS—COMPENSATION.

A corporation may pay fair compensation to its officers for serv-
ices other than those pertaining to their official positions.

5. SAME—MINORITY STOCKHOLDERS—NOTICE—ESTOPPEL—EXCESSIVE
SALARIES.

In suit by minority stockholder against corporation and its
president, the principal stockholder and manager, for account-
ing as to excessive salary and mishandling, and improper with-
holding from distribution, of surplus, claim that president
could not receive any salary as president unless provided for
in by-laws *held,* advanced too late where not presented until
about eight years after plaintiff became a stockholder, during
much of which time he was in intimate contact with the busi-
ness, books were open to his inspection, he was never refused
information nor rebuked for making inquiry, and knew salary
drawn by president and never complained of it.

6. SAME—OFFICERS—COURT INTERFERENCE.

It is not the function of the court to manage a corporation nor
to substitute its own judgment for that of its officers and it is

only when the officers are guilty of wilful abuse of their dis-
cretionary powers or of bad faith, neglect of duty or perver-
sion of purpose or when fraud or breach of trust are involved
that the court will interfere.

7. SAME—DISCRETION OF OFFICERS INTERFERED WITH ONLY IF ABUSED
IN BAD FAITH.
    Court is loath to interfere with discretion vested in corporation's
    officers to declare dividend out of surplus profits unless it
    clearly appears that discretion is, in bad faith, abused.

8. SAME—SALES AGENCY—JOBBER—DISTRIBUTOR—FISCAL OPERATIONS
—DISCRETION OF OFFICERS.
    Corporation which started in business as sales agency for lubri-
    cating devices, expanded into jobbing business and also as a
    distributor in which it is required to do some processing, which
    operations required a surplus to take care of present business
    and provide for expansion of trade in view of reluctancy of
    banks to make loans to such borrowers without collateral, size
    of surplus, inventory, investment account and quick assets
    *held*, not to indicate an improper design nor disregard of
    stockholders' interest where over a period of about eight years
    100 per cent. stock dividend and substantial cash dividends
    have been declared, especially where plaintiff in suit for ac-
    counting fails to indicate proper amount for surplus.

9. SAME—ERECTION OF BUILDING—GOOD FAITH—COURT INTERFERENCE.
    Record in minority stockholder's suit for accounting against
    corporation and its principal stockholder, the president and
    manager, *held*, not to show that purchase of a lot and purpose
    of building rather than continue renting and moving from
    time to time was to withhold dividends from plaintiff or was
    in bad faith or that court was justified in interfering.

10. SAME—PURCHASE OF SECURITIES BY PRESIDENT—ACCOUNTING FOR
DECLINE IN MARKET VALUE.       .
    President of corporation who purchased securities for it *held*, not
    chargeable with decline in market value in the absence of good
    faith or the exercise of honest judgment in their purchase
    where done for a proper purpose and for benefit of the busi-
    ness.                                                      .

11. EVIDENCE—NEGLIGENCE—DECLINE IN MARKET VALUE OF SECURI-
TIES.
    Decline in market value of investments in securities made in 1933
    *held*, no evidence of negligence in their purchase.

12. Corporations—Fraud—Accumulation of Surplus—Scrutiny of Balance Sheet.

Scrutiny of balance sheet of corporation made by Supreme Court on appeal from decree in minority stockholder's suit for accounting is made not for purpose of determining whether distribution of dividends is possible as a business proposition but to ascertain whether surplus was so large and presently useless and probably unnecessary for future business as to indicate its accumulation was fraudulent or against rights of stockholders.

13. Same—Misconduct of Business—Evidence.

Misconduct of business of corporate defendant by defendant president *held*, not evidenced by surplus accumulated as of time plaintiff minority stockholder ceased to be director or at time subsequent to commencement of his suit for an accounting, or otherwise.

Appeal from Wayne; Murphy (Thomas J.), J. Submitted January 16, 1936. (Docket No. 86, Calendar No. 38,509.) Decided June 29, 1937.

Bill by H. Halvor Barrows against J. N. Fauver Company, a Michigan corporation, and John N. Fauver for an accounting, an injunction and to require payment of a dividend. Decree for plaintiff. Both parties appeal. Reversed and decree ordered entered for plaintiff in reduced amount.

*Frederick E. McCain,* for plaintiff.

*John W. Hindes (Pliny W. Marsh,* of counsel), for defendants.

Fead, C. J. Defendant corporation has capital of $10,000. Plaintiff owns six shares of stock, defendant Fauver 92 shares, and Mrs. Fauver two shares. Plaintiff filed this bill for an accounting, the nature of which is indicated by the decree entered.

The decree orders the corporation to pay plaintiff four small items aggregating $153.20; requires Fauver to return to the corporation $2,400 received by him for salary as manager; commands sale of all stocks and bonds owned by the corporation, in which Fauver invested its surplus money; decrees distri-

bution as dividends of all surplus of the corporation in excess of $10,000; and requires such surplus, if not invested in merchandise, to be carried in cash or United States tax exempt bonds. Both parties appeal.

The bill was filed August 8, 1933. Decree was entered April 6, 1935. Defendant moved for a new trial on account of a change of business conditions. The motion was denied. It should have been granted. The principal issue was not the proper division of the assets of the corporation but whether the corporation was being conducted in disregard of plaintiff's rights as a stockholder and a distribution of assets should be ordered. The character of the action requires that relief, particularly as to distribution of surplus, be based upon present, actual and probable future conditions and needs of the company, and it cannot be resolved back to a situation which no longer exists. Hopes and expectations in 1933 had been converted into realizations or disappointments in 1935 and a more normal business condition prevailed. This court ordered further testimony and it was taken upon the basis of the financial condition on June 30, 1936.

The corporation was organized in 1924, with capital of $5,000, contributed by Fauver, who took all the stock except one share to his wife and one to his attorney. The business has been managed by Fauver in an informal manner, with few stockholders' or directors' meetings and substantially without corporation records but with marked success. In addition to 100 per cent. stock dividend in 1928, the corporation has paid cash dividends every year since 1927, except 1930, aggregating $24,375, $9,875 of which were paid before this suit was begun and $14,500 afterwards.

Plaintiff entered the employ of the corporation as a salesman in 1925, and so continued until he resigned in May, 1933. He became a stockholder in 1927. He was a director from September, 1932, to June, 1933. He conducts a sales agency and as to some of his wares he is in direct and vigorous competition with defendant company. He denies a purpose to cripple it by this suit. In addition to a stock dividend of one share, he has received cash dividends aggregating nearly 250 per cent. of the par value of his stock. The record does not show what he paid for his shares.

As to the claim of $153.20, the record justifies award to the plaintiff from the corporation of two items, $49.27 and $40 respectively, but does not permit allowance of the balance of the claim.

Plaintiff worked for defendant corporation on salary and commission. Fauver drew a salary each year, at first very small, increasing as the business grew, but over the period to 1929 his total pay did not equal that of plaintiff. In 1929, with the consent of the directors, Fauver was paid an extra $2,400 in order to render his past compensation about equal to what plaintiff had drawn.

From 1926 to 1932 inclusive, Fauver's total compensation from the company, aside from dividends, averaged about $8,000 per year, while plaintiff's averaged about $6,000 annually. The undisputed testimony is that Fauver's salary was not unreasonable or excessive and the record is wholly devoid of evidence of fraudulent conduct or purpose on his part.

Plaintiff, however, contends that as Fauver was president of the corporation he could not receive any salary from it unless it were so provided in the by-laws. Fauver's salary was paid him as manager

and had no relation to his office as president. A corporation may pay fair compensation to its officers for services other than those pertaining to their official positions.

Moreover, it is too late for plaintiff to prevail upon the contention. He was always in intimate contact with the business. The books were kept in the office where he spent much of his time and were open to his inspection. Neither as stockholder nor director nor otherwise was he refused information by Fauver nor rebuked for making inquiry about anything. He knew Fauver was drawing a salary and never complained of it. On the contrary, he proposed a plan to Fauver by which the earnings of the company should be divided by way of salaries, with only a small proportion retained to pay dividends and to build up surplus. And his own plan contemplated greater compensation to Fauver than he himself would receive. His profession of ignorance of Fauver's salary is not convincing. But in any event, having had readily open to him full sources of information and knowing at least the general situation, he cannot now claim ignorance of the items or amount of Fauver's salary nor have accounting for it. The case is ruled by *Goodspeed* v. *Goodspeed,* 273 Mich. 87, in this respect.

The portion of the decree requiring Fauver to account for the $2,400 is reversed.

It is not the function of the court to manage a corporation nor to substitute its own judgment for that of the officers thereof. It is only when the officers are guilty of wilful abuse of their discretionary powers or of bad faith or of neglect of duty or of perversion of the purpose of the corporation or when fraud or breach of trust are involved that the

court will interfere. *Dodge* v. *Ford Motor Co.,* 204 Mich. 459 (3 A. L. R. 413).

While the court has power to order a dividend out of surplus profits—"it will not infringe upon the discretion vested in corporate officers, and in any instance is loath to act unless it is clearly made to appear that the discretion is, in bad faith, abused." *Morehead Manfg. Co.* v. *Washtenaw Circuit Judge,* 254 Mich. 697.

The record is clear that Fauver had visions of expansion of the business and that his conduct of it was not only presently sound but intelligent in preparation for anticipated future increase. Originally the business of the corporation was that of sales agency for lubricating devices, in which capacity it took orders which were filled by the manufacturer and the company received a commission. It expanded into the jobbing business, purchasing devices and selling them to consumers. It is also a distributor, buying from the manufacturer and selling to jobbers. All of these activities require both clerical and engineering services. And in its jobbing and distributing business the corporation is required to do the processing of some goods in order to fit the needs of the customers. Obviously the business required a surplus to take care of present business and provide for expansion of trade.

It is also undisputed that loans to sales agencies are not preferred by banks unless they are secured by collateral. Fauver invested part of the surplus in bonds and stocks with the idea that he would keep the funds employed and could sell securities or borrow money to handle large orders which he thought he might receive. Since then his hopes of large orders have been realized. And while the company

has been able to handle them without borrowing, the wisdom of providing for the contingency needs no supporting argument.

Not only is the record devoid of any showing of improper motive on the part of Fauver but events have demonstrated his business acumen, as a comparison of figures will show. Using round numbers, the sales in 1933 were about $50,000, the net profits $925, the surplus $35,000, the investment account at cost $30,000, and at market value $16,000. Each subsequent year showed a splendid gain, so that in 1936, sales (10 months) were over $280,000, net profits (six months) $21,000, surplus $76,000, investment account at cost $24,000, and at market value $18,000. Some of the securities had been sold at a loss and others at a profit. As a whole, the account had increased $6,500 in value since 1933.

As of June 30, 1936, the cash, accounts receivable and investments totaled $48,000, with accounts and taxes payable of $23,000, leaving a balance of $25,000 of so-called quick assets. Certainly, this is not an unreasonable cushion.

In 1936 the company had a merchandise inventory of $29,000, with work in process for labor and materials $17,000, a total of $46,000. Fauver concedes that the inventory was too large and the board of directors discussed the declaration of a dividend of $20,000 in 1936. The record does not indicate whether or not this was done. (Counsel for defendant in his brief states that, subsequent to the hearing in 1936, $40,000 was paid in dividends.) Everyone admits that an inventory is not subject to exact measurement nor is it wholly within the control of defendant. Sometimes the manufacturer requires that a certain amount of his goods be kept on hand, and, of course, inventories are also dependent upon

estimates of the needs of the business. The most that can be said about the item is that it grew by reason of good business, that defendant was receiving some large orders, and if and in so far as the inventory was excessive, it was a natural outcome of the growth of the concern, and, in no event, more than a mistake in judgment or failure to watch it closely. It does not indicate an improper design nor disregard of the interests of the stockholders.

An interesting element of. plaintiff's complaint about the surplus is that, while he insists it should be distributed down to $10,000, as provided in the decree, he testified that such amount would be insufficient for the business and he refused to give an opinion of an adequate sum.

The present quarters of the corporation are inadequate. The directors want to build their own plant. They have purchased a lot and paid $8,750 thereon. The land is now worth more than the company paid for it. Plaintiff complains of the purchase and the purpose to build and insists that it would be cheaper for the company to rent and move from place to place as its necessities demand. Whether a corporation should rent or have its own home primarily is a matter for the board of directors to determine. It is not for the court to say that it is cheaper to rent or is not good business to build and decree accordingly. There is nothing in the record to show that Fauver or the corporation have decided to build for the purpose of withholding dividends from plaintiff or are not acting in good faith, and this court has no reason to interfere.

Plaintiff also contends Fauver should make up the loss between the cost and market value of the securities purchased by him for the corporation. The investments were made before 1933, and a decline in

their market value is no evidence of negligence in their purchase. The record does not impugn Fauver's good faith or care or exercise of honest judgment in the purchase of securities. It was done for a proper purpose and for the benefit of the business and Fauver is not chargeable with any loss thereon.

While we have set up figures and discussed their application to the claims of plaintiff, this opinion is not to be taken as meaning that the court will audit balance sheets or minutely measure surplus to ascertain whether a distribution as dividends is possible as a business proposition. The scrutiny was merely to ascertain whether there was a plain and abundant surplus, so large and so presently useless and probably unnecessary for future business as to indicate that its accumulation was fraudulent or against the rights of stockholders. Whether it be taken as of 1933 or 1936, the surplus does not indicate misconduct of the business by Fauver, nor is there other evidence thereof.

The decree will be reversed and one may be entered for judgment of $89.27 in favor of plaintiff and against defendant corporation,.but denying all other relief prayed. Defendants will have costs of both courts.

NORTH, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred with FEAD, C. J.

POTTER, J., concurred in the result.

TOY, J., took no part in this decision.