ROYAL HIGHLANDERS, APPELLEE, V. GILMORE R. WISEMAN, APPELLANT: GEORGE M. MULLEN ET AL., CROSS-APPELLANTS.
299 N. W. 459

FILED JULY 11, 1941. No. 30977.

*Harry Grimminger* and *Beghtol, Foe & Rankin,* for appellant.

*Flansburg & Flansburg,* for appellee.

*Jackson B. Chase, Loren H. Laughlin, John C. Mullen, William H. Thomas* and *Wilber S. Aten,* for cross-appellants.

Heard before SIMMONS, C. J., ROSE, EBERLY, CARTER and MESSMORE, JJ., and MEYER and ELLIS, District Judges.

EBERLY, J.

In this proceeding Gilmore R. Wiseman is appellant, George M. Mullen, C. E. Walsh, Estelle Guye and Rena Hyatt appear as cross-appellants, and the Royal Highlanders is appellee. The appellant and cross-appellants seek a review of the judgment entered in the district court for Lancaster county in favor of the appellee herein, and against

the appellant and cross-appellants, wherein that court "finds generally in favor of the Royal Highlanders, * * * upon each and all of the issues presented by the pleadings in this case;" approves the determination of the board of directors of the Royal Highlanders that there was $810,-724.97 properly available for distribution to the policy-holders thereof, and approves the terms, manner and form of the distribution of that sum made by such board. This judgment also determined that the order of the department of insurance directing that such board of directors make an additional distribution to such policyholders of the sum of $514,885.90 over and above the sum of said $810,724.97 was improvidently made and entered, and the same was set aside and reversed. The correctness of this determination is presented by this appeal.

We do not overlook, in this connection, the attack upon the legality of the present corporate organization of the Royal Highlanders as being wholly unauthorized by the statute (now Comp. St. Supp. 1939, sec. 44-415) from which its corporate powers in its present corporate form are derived. However, all parties to this litigation are in apparent agreement that immediately prior to the present change of this corporate entity it had been duly organized and incorporated as a fraternal insurance company and for many years had been successfully carrying on business as such. But a situation had been developed in the affairs of this organization which clearly indicated the wisdom of changing the Royal Highlanders, a fraternal society, into a mutual legal reserve life insurance company. Proposed amended articles of incorporation to accomplish that purpose were accordingly adopted by a two-thirds vote of the board of directors. The form of the communication by which the proposed change was to be submitted to the membership was approved, and also the form of the proxy by and through which the membership would accept or reject such proposition was duly approved by such board of directors. Thereafter on March 10, 1937, an application for change of charter was filed with the department of insurance. This applica-

tion set forth the amended articles, the proposed communication to the policyholders calling the special meeting and the form of proxy whereby the policyholders were each given the right to express his approval or disapproval of the proposed change; and there was also made a part thereof a financial statement which disclosed that the total admitted assets of the Royal Highlanders just before March 1, 1937, was $4,611,579.82, and that the total surplus of the company at that time, that is, assets over liabilities, was in the amount of $2,177,645.87, and that the society was 189.47 per cent. solvent. On March 10, 1937, the department of insurance entered an order approving all steps taken "under and by virtue of the provisions of the statutes, section 44-415," and also directed that the Royal Highlanders call a meeting of its policyholders to be held at 10 o'clock a. m. on April 24, 1937, at its home office at 1321 Sharp Building, Lincoln, Nebraska, for the purpose of voting upon the proposition to adopt the amended articles and to change the Royal Highlanders into a mutual legal reserve life insurance company, in the manner, upon notice, as directed by the terms of the aforesaid order. As a part of the aforesaid order the following was included:. "The department of insurance further directs that there shall be no distribution of any of the assets of the company, but that all present funds shall be maintained and devoted to the same purposes as heretofore existed in such company." This order further directed that the results of such election be reported to the department on April 24, 1937. It appears that a paper document including all the matters approved by the department, and including a complete copy of its order of March 10, 1937, was immediately mailed to each policyholder as directed. The election was held. The total membership of the Order at that time was 8,017. Five thousand five hundred and forty-three (5,543) votes were duly cast in favor of the mutualization plan, and 107 votes were cast against it. A two-thirds vote was the legal requirement to carry and adopt the proposition submitted; 98.1 per cent. of those voting were in favor of the proposed plan. This vote was re-

ported to the department, and its final order approving the mutualization and permitting the filing of the amended articles of incorporation was entered by the department on May 4, 1937. The Royal Highlanders immediately filed and published its amended articles as a mutual legal reserve life insurance company, made its deposit of the required amount of $125,000 to the insurance department, and was issued a certificate to do business as such company, which certificate has been regularly renewed from year to year. The Royal Highlanders immediately dissolved its 197 lodges scattered through 15 states, and the assets and properties of such lodges were sold and the proceeds divided among the members of such lodges. From the date of the entry of the final order of May 4, 1937, the Royal Highlanders became, and thereafter continued to be, a mutual legal reserve life insurance company; for no appeal to the district court was taken therefrom within 20 days from the date of this order as limited by law, and the controlling statutory provision is, "The decision of the department of trade and commerce (insurance) shall remain in full force until reversed by final judgment of the (district) court." Comp. St. 1929, sec. 44-1116. See, also, *Leininger v. North American Nat. Life Ins. Co.*, 115 Neb. 801, 215 N. W. 167.

Notwithstanding the failure to appeal from this order, appellant and certain cross-appellants insist on lack of legal organization of the appellee as a mutual legal reserve life insurance company, seek to deny it the full exercise of corporate powers which, if lawfully organized, it would possess, and insist on claimed rights against it based on that contention.

That section 44-415, Comp. St. 1929, as amended, provides for the creation of a corporation with the powers here assumed must be admitted. That there was a *bona fide* attempt by the corporate authorities under such law with a colorable compliance with its requirements cannot be gainsaid. It also appears that the proceedings of the Royal Highlanders in accomplishing the proposed transformation has been submitted to the director of insurance, examined by

him, and in all respects approved, and a proper certificate of incorporation as a mutual legal reserve life insurance company has by him been duly issued to the appellee, and since the issuance of said certificate it has openly and continuously exercised the corporate powers evidenced thereby. In view of the situation thus created, it appears that the regularity and lawfulness of appellee's corporate organization affords no ground for challenge or basis of relief against it in this proceeding. *Parks v. James J. Parks Co.*, 128 Neb. 600, 259 N. W. 509.

The general rule appears to be that a court or officer may revoke or qualify a certificate, license or charter (of incorporation) after issuing or granting the same only to the extent and under the conditions that he is authorized by statute. The director of insurance, under the facts in this record, is not empowered by statute to revoke the certificate of incorporation, neither has he attempted so to do. It remains, therefore, in full force and effect, and has been annually renewed.

Then too, this corporation's legal existence as a mutual legal reserve life insurance company is not subject to collateral attack by private individuals or by the state; nor can it be questioned on direct attack by private individuals, but only by the state. 18 C. J. S. 489, sec. 94. See, also, *Interstate Airlines, Inc., v. Arnold*, 127 Neb. 665, 256 N. W. 513; *Thies v. Weible*, 126 Neb. 720, 254 N. W. 420.

It thus appears that the sole question rightfully presented for the determination of this court is the right of appellants to insist on the further distribution of the additional sum of $514,885.90 by the Royal Highlanders as a duly and legally organized mutual legal reserve life insurance company, a going concern, in view of the rights and contracts of its membership created by the policies issued by the Royal Highlanders as a fraternal insurance society prior to its assuming its present status.

It will be noted that by this mutualization the identity of the company was not changed. A new corporation is not created. The old corporation continued with new powers.

The title to the assets continues in the same company and it is not relieved of its liabilities. The obligations of its contracts are and must remain unimpaired.

Section 44-415, Comp. St. Supp. 1939, provides: "Such change shall in no way prejudice or impair any pending action or right previously acquired, or annul or change any existing contract of such company."

See *Jones v. Loaleen Mutual Benefit Ass'n,* 255 Ill. App. 170, affirmed in 337 Ill. 431, 169 N. E. 254; *Wright v. Minnesota Mutual Life Ins. Co.,* 193 U. S. 657, 24 S. Ct. 549; *Polk v. Mutual Reserve Fund Life Ass'n,* 207 U. S. 310, 28 S. Ct. 65.

All insurance contracts of the Royal Highlanders issued prior to May 4, 1937, were continued in full force, and were evidenced by the application for membership, the certificate of insurance, the edicts or by-laws of the society, and the fraternal laws under which such policies were issued. Comp. St. Supp. 1939, sec. 44-1239; *Pope v. Royal Highlanders,* 101 Neb. 774, 164 N. W. 1047; *Sharpe v. Grand Lodge, A. O. U. W.,* 108 Neb. 193, 201, 188 N. W. 100, 189 N. W. 176; 45 C. J. 24-30.

Fraternal certificates issued by the Royal Highlanders prior to May 4, 1937, still continue to be the same kind of contracts as before transformation and are evidenced and established by the same proof as was required prior to mutualization. *Yeoman Mutual Life Ins. Co. v. Murphy,* 223 Ia. 1315, 275 N. W. 127; *United Mutual Life Ins. Co. v. State,* 194 Ark. 371, 108 S. W. (2d) 484; Comp. St. Supp. 1939, sec. 44-415.

There were three classes of policyholders in this company before and at the mutualization, which are designated in the record as the participating Ideal Reserve policyholders, the nonparticipating Ideal Reserve policyholders, and the members holding fidelity certificates. Each of these policyholders had individual rights determined by his contract, but as a mutual member in the company he also had beneficial rights common with all the rest in contingent funds and general funds held for the benefit of the whole mem-

bership. But the nonparticipating policyholders were by the terms of their policies excluded from participation in the distributable surplus. Among the provisions of the by-laws relating to the "participating policies" are the following:

"The member named herein shall participate in any surplus accumulating in the Ideal Reserve Fund after two full years of membership. The *portion* of such surplus to which said member shall be entitled, and the *time* and *manner* of payment shall be determined by the Executive Committee in accordance with the Edicts of the Society."

Further, "Members holding Ideal Reserve Policies will be admitted from time to time to participate in the surplus. Such participation in the surplus shall be in accordance with the scale approved by the Executive Committee, which committee *shall have power to determine the amount and its prescribed methods of distribution.* The part of surplus which *may* be applied for apportionment shall consist of such amount of funds accumulated *from the monthly payments of such members* as may be left after the mean reserve and other liabilities are determined and any contingent reserve set aside."

Thus, by the terms of the by-laws, and of the contracts of insurance of which they constituted a part, the distribution to each member holding participating Ideal Reserve policies was limited to the accumulations on his own payments and reserves. The moneys on reserves accumulated from payments of Ideal Reserve policies which lapsed before the third year, the by-laws provided, were to be transferred to the general fund for general expense purposes. These by-laws also contained provisions for the creation and maintenance of certain other funds for the benefit of the membership without regard to the class to which they might belong. All of these provisions constituted essential elements of their membership contracts and the proper performance thereof was necessary to the proper observance of the obligations due to the membership.

Section 44-415, Comp. St. Supp. 1939, provides that in its

order of approval of the application of a fraternal society to change to a mutual legal reserve life insurance company the department of trade and commerce (insurance) shall also make such order with reference to the distribution of any existing or future surplus of such company as may be just and equitable. This language definable as concerning or pertaining to the disposition of existing or future surplus does not necessarily require or imply the making of an order of distribution. An order determining no distribution necessary on the change of form of corporate organization is equally an order in reference to "distribution." The terms of such an order are necessarily determined by the circumstances of the particular case.

Such section 44-415 further provides that there shall also be inclosed with such notice (of submission of proposed change) served on each member of the corporation, a copy of the approval of the department of insurance of the proceedings had, and also its order as to proposed disposition or distribution of the surplus assets of such company.

This determination as to the surplus was made by the department of insurance only as a prescribed condition to be accepted and performed by the corporation affected in accomplishing a valid change of "its articles of incorporation and methods of doing business" under the terms of the section referred to. As a prescribed condition to a transition it had no force and effect until and unless accepted by an affirmative vote of the persons in interest.

These questions at issue involved in the proposed change of form in the corporate organization are to be determined on the basis that the transition from the strictly fraternal form of this organization to the mutual legal reserve life insurance form was fully and effectively completed with the order of the department of insurance of May 4, 1937. The questions here presented do not rise out of or adhere to the making of that change. After that date, in its new capacity, this corporation was and is a going concern. Its several corporate officers are lawfully in charge of their several offices and engaged in the conduct of its business affairs.

It is in court now as an admittedly solvent company, well and conservatively managed. There is no evidence in the record to sustain any charge of fraudulent action, bad motives, or misconduct in the business transacted by its properly chosen officials. Its board of directors is its governing body, and lawfully vested with the management of its ordinary corporate affairs. Within the limits of their authority directors possess full discretionary powers, and in the honest and reasonable exercise of such powers are not subject to control by stockholders or by courts at the instance of stockholders. The accepted principle is that the wisdom and expediency of business policies and the methods of executing them are left to the discretion and decision of the board of directors. The established rule is that, in the absence of usurpation, or fraud, or of gross negligence, or transgression of statutory limitations, courts of equity will not interfere at the suit of dissatisfied stockholders merely to overrule and control the discretion of directors on questions of corporate management, policy or business. It would seem that this, as a general principle, would be equally applicable to the department of insurance.

The statutory provisions applicable were strictly complied with, and to each member of the Royal Highlanders the terms of this order as to continuance of "funds" and disposition of surplus formed the basis of his affirmative vote accepting the proposed change of form in corporate organization. In reliance on this condition, so approved by the department of insurance, the change in corporate form was actually effected by the Royal Highlanders. The membership of this organization has never approved any change in this condition.

Nevertheless, the department of insurance, on May 6, 1938, entered its order for final disposition of surplus, directing distribution to policyholders of the sum of $1,325,610.87. This order was properly subject to review by the district court. Comp. St. 1929, sec. 44-1116.

The controlling principle in determining the rightfulness and legality of this action by the department is that here

the right of policyholders to participate in the distribution of surplus in the insurance company depends entirely upon the existing contract between the policyholder and the company. In this case the respective beneficial rights of the members of the Royal Highlanders whose membership antedated May 4, 1937, are unchanged. Article VII of the amended articles of incorporation, as duly approved and adopted, relating to existing contracts, policies and funds, recites:

"All contracts and policies of insurance now in force and outstanding shall remain in force and be binding to all intents and purposes and to the same extent as is now provided by such contracts, and the Edicts of the Royal Highlanders in relation thereto and all funds of the society shall be maintained and devoted to the same purposes as now provided, and the Edicts governing such contracts and policies shall remain in force as the By-Laws pertaining to such matters until duly amended by the Board of Directors; and the Board of Directors shall have the same power to make reasonable amendments in the By-Laws as has existed in the Executive Castle."

The powers and duties of the board of directors of the Royal Highlanders with regard to divisible surplus, and the rights of the fraternal policyholders to an apportionment or payment, are all specifically provided for in the edicts, policies and fraternal statutes, as well as in the amended articles referred to. These powers result from contracts as agreed to and legislative enactments and by-laws which limit and control the rights of participation here involved. It appears that subsequent to mutualization the officers of the company proceeded to determine the question as to whether the society's surplus on May 4, 1937, was sufficient to make a distribution to policyholders in addition to regular dividends. To this end a competent actuary, with a staff of assistants, was employed, who made a careful and thorough examination. The board of directors, upon due consideration of his report, the surrounding circumstances, the business situation then existing, and not forgetting in these

troublesome times that ample reserves and contingency reserves must be set aside to fully guarantee the present existing obligation to the policyholders and their contract rights, in the proper exercise of their discretion, and in good faith, determined that there was $810,724.97 surplus available for distribution to policyholders in accordance with the terms of all policies then in force. The clear preponderance of evidence in the record fully justifies this action so taken. The actual situation at present is that the department of insurance believes that there should be $514,885.90 distribution made over and above the $810,724.97 distribution as made by the board of directors of the Royal Highlanders. Also, it entered an express order so directing on May 6, 1938. This was not an order of distribution provided for in such section 44-415; for the requirements of that section and the directions of the department of insurance thereunder had been fully complied with by the Royal Highlanders who, long prior to the date of the order of distribution last referred to, had been a mutual legal reserve life insurance company duly organized and doing business as such. It follows, therefore, that this order of the department of insurance is not sustainable under section 44-415, as amended.

True, the insurance department has general powers conferred upon it by the statutes of its organization. The right of investigation and review is conferred upon it, and if it ascertains that the insurance company investigated "has failed to comply with any provisions of this act (Comp. St. 1929, ch. 44, as amended) or is exceeding its powers, or is not carrying out its contracts in good faith, or is transacting business fraudulently," corrective measures are authorized. As to the proper exercise of their powers and the proper performance of the duties enjoined thereby, this court has adopted the general principle that the powers and duties of the insurance commissioner or superintendent are limited to those defined by statute. *Grand Lodge, A. O. U. W., v. Insurance Board,* 103 Neb. 99, 170 N. W. 617. However, in determining the validity of the departmental action, due

consideration must be given in this connection to the principle that, where the board of directors is vested with the power, either generally or by specific provision, to determine the time, amount, and method of distributing surplus, the courts will not ordinarily interfere, in the absence of a showing of fraud or bad faith, or a clear transgression of a legislative mandate. See *Greeff v. Equitable Life Assurance Society*, 160 N. Y. 19, 54 N. E. 712; *Bain v. Aetna Life Ins. Co.*, 21 Ont. Rep. 233; *Gadd v. Equitable Life Assurance Society*, 97 Fed. 834; *Wright v. Minnesota Mutual Life Ins. Co.*, 193 U. S. 657, 24 S. Ct. 549; *Midland Savings & Loan Co. v. Dunmire*, 68 Fed. (2d) 249; *City Bank Farmers Trust Co. v. Hewitt Realty Co.*, 257 N. Y. 62, 177 N. E. 309; *Gesell v. Tomahawk Land Co.*, 184 Wis. 537, 200 N. W. 550; *McNab v. McNab & Harlin Mfg. Co.*, 62 Hun, 18, 16 N. Y. Supp. 448; *Flynn v. Brooklyn C. R. Co.*, 158 N. Y. 493, 53 N. E. 520; *Hopkins v. Union Canvas Goods Co.*, 104 Pa. Super. 264, 158 Atl. 301; *NY PA NJ Utilities Co. v. Public Service Commission*, 23 Fed. Supp. 313; *Jones v. Van Heusen Charles Co.*, 230 App. Div. 694, 246 N. Y. Supp. 204; *Morehead Mfg. Co. v. Washtenaw Circuit Judge*, 254 Mich. 697, 236 N. W. 911; *Black v. Pacific Mutual Life Ins. Co.*, 31 Fed. Supp. 805; *Barrows v. J. N. Fauver Co., Inc.*, 280 Mich. 553, 274 N. W. 325; *Shonnard v. Elevator Supplies Co., Inc.*, 111 N. J. Eq. 94, 161 Atl. 684.

It would seem that principles which determine the action of our judicial department would be equally potent as requirements to be observed by administrative officials.

Then too, it appears from the record that the determination of the amount of distributable surplus in the instant case was made by the department of insurance on the basis of "book values" of the company's assets directed to be distributed. It is to be remembered that, where a divisible surplus is determined and ordered distributed, it, like a dividend, becomes a liability which eventually must be paid. In order to determine what distribution to policyholders should be made, it is incorrect to include ought but actual value of assets. It follows that actual value of assets alone

may be considered. *Cannon v. Wiscassett Mills Co.*, 195 N. Car. 119, 141 S. E. 344. Indeed, a careful consideration of the evidence in the record as an entirety wholly fails to sustain the reasonableness of the "amount of distributable surplus" as fixed by the department of insurance, but clearly establishes that the same is excessive and violated the duties enjoined on the company by the terms of its policies outstanding. Even certain cross-appellants in their brief admit that this distribution (made by the board of directors and approved by the trial court) "is the amount the policyholders believe is proper to be distributed at this time." And again, "By recognizing present conditions, the policyholders agree that it is very necessary to withhold a much larger surplus than that permitted by the department in order to protect against the dangers threatening this heavily unbalanced portfolio." It is obvious that the power and duty to make this determination as to the amount and method of the distributable surplus are vested primarily in the board of directors. It is implied in the statutes of such board's creation. No legislation purports to deny or limit the due exercise of this power by this corporate agency; neither under the circumstances here existing can it be said to be conferred upon the department of insurance. The express terms of the contracts here involved manifest a clear purpose that they shall be carried out and performed by the parties thereto. So the board of directors are the express recipients of this responsibility, not the courts, and not the department of insurance. While judicial review by court or administrative agency is of course conceded, when these duties so imposed on the board of directors are lawfully and properly performed; and the reasonableness of the action taken is supported by the proof adduced, their reasonable discretion will not be interfered with, and their determination of the questions involved is controlling and will be sustained, as to both amount and method of distribution.

Section 44-1116, Comp. St. 1929, provides for an appeal from a decision by the department of insurance to the district court, and this case is now presented to us to review

the determination of the district court made in an appeal brought to it pursuant to this statute. So considered, as an appeal in equity for consideration *de novo,* from all the evidence, we find that in limiting the distribution of surplus funds to $810,724.97 the board of directors has violated no provisions of statute (Comp. St. 1929, ch. 44, art. 12), has not exceeded its statutory powers, is in all respects carrying out its contracts in good faith, and is not transacting business fraudulently. Furthermore, we find that the action taken by such board of directors, both as to amount and method of distribution, is reasonable and in all respects justified by the facts disclosed and established by the evidence, as clearly within their legitimate discretion.

It follows that the judgment of the district court sustaining the action of the board of directors of the Royal Highlanders, and reversing the order of the department of insurance, is in all respects correct, and it is

AFFIRMED.