## Tuchinsky v.
## The Mutual Assurance Company

*Pace Reich,* for plaintiffs.
*Harvey Bartle,* for defendants.

KALISH, *J.,* February 22, 1977—

## I. *ISSUES*

Plaintiff-petitioners are before the court seeking a permanent injunction* to enjoin defendants from accepting new deposits on perpetual fire insurance, perpetual extended coverage insurance, and perpetual additional extended coverage insurance on a dividend paying basis equal to that of the presently existing policyholders. Petitioners contention, based chiefly upon certain assumptions

---

*Plaintiffs' earlier petition for a preliminary injunction was dismissed by this court in an adjudication dated June 10, 1976. The overall history of the instant controversy is somewhat involved. Initially, in March of 1973, a class action was commenced by a Mr. and Mrs. Erwin L. Pincus on behalf of the policyholders of Mutual seeking the distribution of some $10,000 allegedly held by the insurance company for no legitimate corporate purpose. After several appeals both to the Pennsylvania Superior and Supreme Courts, this court in an adjudication dated December 3, 1976, dismissed plaintiffs' action: Pincus v. Mutual Assurance Company, 4 D.&C. 3d 71 (1976). Meanwhile, in May of 1976, the instant equitable action was instituted.

and extrapolations contained in an actuarial study commissioned by defendants, is that current dividend rates and levels of company expenditures exceed the amount of investment income realized on new premium deposits received by the company and, therefore, all new policies written result in losses for the company. To "make good" the losses incurred on a current basis, it is allegedly necessary for the company to "set aside" $180 for every $100 of deposit received. This, petitioners contend, results in a reduction of surplus generally available to existing policyholders and reduces the ability of the company to earn sufficient income to pay operating costs and future dividends. Thus, it is argued, continued acceptance of new deposits on the same dividend paying basis as on presently existing policies constitutes a wasting of company assets and should be enjoined. . . .

## III. *DISCUSSION*

Suits which seek to challenge the management policy of mutual companies such as herein involved, are governed by the legal principles applicable to similar suits brought against stock companies: Gross v. Philadelphia Contributionship, 73 D. & C. 2d 654 (Phila. Co. 1975). Traditionally, the courts of this Commonwealth have been hesitant to interfere with the internal management of corporations: Hopkins v. Union Canvas Goods Company, 104 Pa. Superior Ct. 264, 158 Atl. 301 (1932); Guttman v. Duquesne Brewing Company, 120 Pitts. L.J. 448 (1972). The burden a plaintiff must meet to compel such judicial intervention is extremely heavy. Only if clear disregard of official duties, arbitrary or manifestly erroneous actions, abuse of discretion, or bad faith on the part of di-

rectors or trustees is established may such relief be properly granted: Hopkins v. Union Canvas Goods Company, supra, 104 Pa. Superior Ct. at 266; Pincus v. The Mutual Assurance Company (C. P. Phila., March Term, 1973, No. 4604) December 3, 1976, adjudication at 7; Gross v. Philadelphia Contributionship, supra, 73 D. & C. 2d at 663. Plaintiffs have failed to meet this burden.

Even if the assumptions relied upon by petitioners are accurate and remain constant, at a minimum *several years* must pass before the financial situation of the company would materially change. Clearly, in the present situation there is no threat of immediate harm.

While it is true that if the company continues a policy of generous dividend distributions while all other factors remain the same, there will come a point in time in which insolvency would be imminent or inescapable, that point in time has not yet been reached. Admittedly, the board of trustees of mutual is aware of the problem the company faces, and has been so from the time of the actuarial study in 1974. However, no dividend rate is guaranteed by the company, nor are policies issued on a dividend paying basis. The board of trustees has complete discretion over dividends and may change the rate or eliminate it at will on the basis of factors existing at the time.

The uncontradicted testimony offered by defendants established that the board of trustees takes into consideration the available earnings of the company, its tradition of paying dividends, and the effects of competition, before setting the dividend rate for the current year. As the net income available to the company during 1974 and 1975 was sufficient not only to pay all expenses and div-

idends, but also add over one million dollars to policyholders' equity for each of those years, no imminent wasting of assets is observable.

The granting of a permanent injunction in the present corporate context is an extraordinary remedy which is appropriate in few cases. As was stated by the Pennsylvania Supreme Court: "[E]quity will employ the strong arm of injunctive relief to restrain anticipated injury only when plaintiff's right thereto is clear, and irreparable harm is reasonably certain to result if the relief is not granted." Robinson v. Philadelphia, 400 Pa. 80, 89, 161 A. 2d 1 (1960).

In the instant situation, plaintiffs' request is based solely on projections of Mutual's future financial condition. Obviously, the probability that these projections and their underlying assumptions will, in fact, occur is somewhat speculative. Yet, plaintiffs would have this court substitute its judgment for that of the duly elected board of trustees of this company. Such a task, under the present circumstances, this court chooses not to undertake. On examination of the actions and motivations of those charged with running this company, it is evident that the board of trustees has not acted in such a way as to justify the granting of the requested injunctive relief at this time.

## IV. CONCLUSIONS OF LAW

1. This court has jurisdiction of the parties and subject matter.

2. Plaintiffs have failed to establish that they are entitled to injunctive relief.

Accordingly, for the foregoing reasons, the court enters the following

## DECREE NISI

And now, February 22, 1977, upon consideration of the foregoing, it is hereby ordered, adjudged and decreed that the action of plaintiffs is dismissed and judgment is entered for defendants (named) against plaintiffs and all other policyholders who have entered appearances.

The prothonotary is directed to enter this decree nisi and to notify the parties, or their counsel. If no exceptions are filed within 20 days after entering this decree, a final decree upon praecipe will be entered.